**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Raymond M. FESSEL, Defendant-Appellant.**

No. 75–1860.

United States Court of Appeals, Fifth Circuit.

May 20, 1976.

Brian E. Berwick, Austin, Tex. (Court-appointed), for defendant-appellant.

H. Patrick Shovlin, U. S. Atty., James W. Kerr, Jr., Asst. U. S. Atty., San Antonio, Tex., Ronald Ederer, Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before WISDOM, GODBOLD and LIVELY,* Circuit Judges.

WISDOM, Circuit Judge:

The defendant-appellant, Raymond M. Fessel, was convicted by a jury of importing approximately seven pounds of marijuana. On appeal he urges reversal of that conviction based both on the inadequate representation provided by his court-appointed counsel and on the failure of the district judge to grant a continuance to permit him to secure information allegedly necessary to his defense. We find merit in both these contentions. We reverse and remand.

Fessel was committed to a mental hospital in New Jersey in April 1973, after an automobile accident. May 1, 1973, against medical advice, he left the mental hospital.

In July 1973, three months later, Fessel was arrested at the United States-Mexico border and charged with attempting to import marijuana in violation of 21 U.S.C. § 952(a). On the advice of court-appointed counsel, the defendant pleaded guilty, but sentence was deferred pending observation and study under the Youth Corrections Act. 18 U.S.C. § 5010(e).[1] Based on a report submitted to the district court by the Bureau of Prisons following two extensions of

---

* Of the Sixth Circuit, sitting by designation.

1. 18 U.S.C. § 5010 provides in relevant part:
   . . . (b) If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter . . . .

   . . . . .
   (e) If the court desires additional information as to whether a youth offender will derive benefit from treatment under subsections (b) or (c) it may order that he be committed to the custody of the Attorney General for observation and study at an appropriate classification center or agency. Within sixty days from the date of the order, or such additional period as the court may grant, the Division shall report to the court its findings.

the normal observation period,[2] the trial judge held a hearing to determine Fessel's mental competency at the time his guilty plea was entered. The trial judge found that the defendant had been incompetent at the time, set aside the plea, and committed him to the custody of the Attorney General for confinement and observation under 18 U.S.C. § 4246, "until the accused shall be mentally competent to stand trial".[3] Over the next several months, Fessel was observed and treated by staff psychiatrists at medical centers for federal prisoners at El Reno, Oklahoma, and Springfield, Missouri.

■ In August 1974, five months after his commitment under § 4246, and about one year after the alleged offense, Fessel moved for a speedy trial, asserting that he was then competent to stand trial. By order of the court, he was examined by Dr. John C. Sparks, a psychiatrist at Lackland Air Force Base who determined that the defendant was then competent to face trial.[4] He was reindicted in November for possession with intent to distribute and importation of marijuana. 21 U.S.C. §§ 841(a)(1), 952(a), 960(a)(1). The court ordered a competency hearing held on December 17 and, based on Dr. Sparks' report and testimony,[5] declared Fessel competent to stand trial. Trial was set for two days later.

Shortly after trial commenced, the defendant's court-appointed counsel informed the court that Fessel wished to defend himself. The court permitted him to do so, with counsel serving in an advisory capacity, but denied his request that he be permitted to find another attorney. The following morning, Fessel filed a formal motion for a continuance, arguing that he had not known until two days before that he would be going to trial that day, and that his repeated requests to his attorney to secure important psychiatric information had proven unavailing.[6] Specifically, Fessel stated that he needed the live testimony of certain government staff psychiatrists who had examined him during his recent confinement at the El Reno and Springfield facilities, as well as the records of a private psychiatrist who had examined and treated him during his confinement in a New Jersey mental institution shortly before his arrest. The trial judge, concluding that the motion was "purely for delay", denied the request, but indicated that the defendant would be permitted to read from any reports prepared by government psychiatrists during his confinement at El Reno and Springfield.

2. The report submitted by the Director of the Bureau of Prisons to the district court in January 1974 contained the express finding of the Board of Examiners "that [Fessel] was incompetent at the time he pled guilty to the instant offense and that he is presently incompetent to be sentenced", and recommended "that the current conviction be set aside".

3. 18 U.S.C. § 4246:
   Whenever the trial court shall determine . . . that an accused is or was mentally incompetent, the court may commit the accused to the custody of the Attorney General or his authorized representative, until the accused shall be mentally competent to stand trial or until the pending charges against him are disposed of according to law.

4. Dr. Sparks' report, dated October 31, 1974, indicates that he found the defendant competent at the time of his examination (October 11). There is no evidence in the record however, to show either that the defendant was made aware of the doctor's findings, or that the court acted on that date to reverse its earlier finding of incompetency. Fessel's counsel has

correctly noted that, although a hearing may not be necessary to declare an accused competent to stand trial, once a judicial determination of incompetency has been made, that finding cannot be set aside absent a superceding judicial order. See Gunther v. United States, 1954, 94 U.S.App.D.C. 243, 215 F.2d 493, 495–97 and n.9, cited in United States v. Makris, 5 Cir. 1973, 483 F.2d 1082. There is nothing in the record to suggest that the court made any explicit finding as to the defendant's competency until the date of the competency hearing, December 17, 1974.

5. In addition to his examination of the defendant in October 1974, Dr. Sparks also conducted a 55-minute examination of Fessel before the competency hearing December 17, 1974.

6. Fessel's charges, made in open court, that his attorney had disregarded his repeated requests to subpoena certain witnesses and medical evaluations went unchallenged by defense counsel.

In the course of trial, the appellant did read from reports prepared by staff psychiatrists, but presented no live expert testimony in his favor. His attorney had neither deposed nor subpoenaed the records of the New Jersey doctor who had examined the defendant shortly before his arrest. The only live expert testimony was that of Dr. Sparks, who stated his conclusion, based on recent examinations, that Fessel was then competent to stand trial and had been competent at the time of the offense.[7]

Thus, the jury had before it the live testimony of only one expert witness, Dr. Sparks, whose testimony was clearly adverse to the defendant.[8] Jurors were not permitted to consider either the reports of the one doctor who had examined Fessel shortly before his arrest, nor the testimony of the staff doctors from El Reno and Springfield who had examined him in the months following his arrest, and whose reports indicated that their testimony would have supported the defendant's claim of incompetency.[9]

The same day the trial began, the jury returned its verdict, finding the defendant guilty on the first count of importation and not guilty on the second count charging possession of marijuana with intent to distribute.

## I.

### Inadequacy of Counsel

On appeal, Fessel's first challenge to the verdict below rests on the allegedly inadequate representation provided by his court-appointed counsel. The appellant contends that the failure of his attorney to prepare an insanity defense by showing his probable incompetence at the time of the offense violated his Sixth Amendment right to effective assistance of counsel. Specifically, Fessel cites his attorney's failure to move, under 18 U.S.C. § 3006A(e)[10] for a court-appointed psychiatrist to assist in the preparation of an insanity defense. This failure, Fessel contends, deprived him of psychiatric testimony necessary to the preparation of his defense, and thus fell below the minimum level of representation guaranteed by the Sixth Amendment. We agree with this contention.

■ The standard for determining adequate assistance of counsel under the guarantees of the Sixth Amendment has been stated by this Court on numerous previous occasions. In *MacKenna v. Ellis,* 5 Cir. 1960, 280 F.2d 592, *cert. denied,* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78, we rejected the "mockery of justice" standard; we defined "effective counsel" in terms of a "reasonable counsel" standard:

> We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.

The Court has reaffirmed this principle in a number of decisions. See, for example,

---

7. Dr. Sparks' opinion as to the competency of the defendant at the time of the offense was made at the express request of the court and was based on his own observations, made fifteen months after the offense at a time when the defendant himself conceded his sanity. Nonetheless, as his was the only expert testimony directed to this critical issue, we cannot disregard its probable effect on the jury.

8. The fact that Dr. Sparks was called by defense counsel does not alter the damaging effect of his testimony.

9. *See* note 12 *infra.*

10. 18 U.S.C. § 3006A(e) provides in relevant part:

(e) *Services other than counsel*—Counsel for a defendant who is financially unable to obtain investigative, expert, or other services necessary to an adequate defense in his case may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the defendant is financially unable to obtain them, the court shall authorize counsel to obtain the services on behalf of the defendant. The court may, in the interests of justice, and upon a finding that timely procurement of necessary services could not await prior authorization, ratify such services after they have been obtained. . . .

*Herring v. Estelle,* 5 Cir. 1974, 491 F.2d 125, 127, see esp. n.4 at 127; *United States v. Edwards,* 5 Cir. 1974, 488 F.2d 1154, 1163.

This Court has repeatedly stressed the "particularly critical interrelation between expert psychiatric assistance and minimally effective representation of counsel." *United States v. Edwards,* 488 F.2d at 1163. In *Edwards,* this Court noted the importance of psychiatric assistance provided by a psychiatrist appointed under § 3006A(e). There we found ineffective assistance of counsel when the defendant's attorney had moved for a § 3006A(e) appointment, but had failed to pursue the motion after the district court mistakenly treated the resulting report as a § 4244 report. In *United States v. Hamlet,* 5 Cir. 1972, 456 F.2d 1284, we held that a psychiatrist appointed by the court under § 4244 to determine the present competency of the defendant to stand trial "falls short of fulfilling the role of an expert selected under § 3006A(e) whose responsibility is to assist the defense".[11] There we held that the trial judge's refusal to grant the § 3006A(e) motion denied the defendant a fair trial and constituted grounds for reversal.

These cases—others could be cited—illustrate the principle that when an insanity defense is appropriate and the defendant lacks funds to secure private psychiatric assistance, it is the duty of his attorney to seek such assistance through the use of § 3006A(e). This assistance is required whenever the services are "necessary to the preparation and presentation of an adequate defense." *United States v. Chavis,* 1973, 155 U.S.App.D.C. 190, 476 F.2d 1137, 1143, cited with approval in

*United States v. Edwards,* 488 F.2d 1162 at n.6; *see United States v. Theriault,* 5 Cir. 1971, 440 F.2d 713, 715, *cert. denied,* 1973, 411 U.S. 984, 93 S.Ct. 2278, 36 L.Ed.2d 960. In the instant case, there could be little doubt as to the appropriateness of an insanity defense and the need for psychiatric assistance to prepare it. The evidence showing Fessel guilty of committing the acts charged was virtually uncontested. The only issue for the jury to consider therefore was the sanity of the defendant at the time of the offense. In the absence of live psychiatric testimony favorable to the defendant, the need for a § 3006A(e) motion was manifest. In these circumstances, we hold that the failure of counsel to utilize § 3006A(e) denied the accused services "necessary to the preparation and presentation of an adequate defense", and thus denied him the minimally effective representation guaranteed by the Sixth Amendment.

## II.

### Denial of Continuance

As an alternative ground for reversing his conviction, one that is indeed serious, the appellant argues that the district judge abused his discretion in failing to grant a continuance to permit him to secure materials necessary to his defense. Fessel points out that a continuance would have permitted him to secure the records of the New Jersey psychiatrist who had examined and treated him shortly before the offense. He emphasizes, too, his counsel's failure to subpoena the government staff psychiatrists from the El Reno and Springfield facilities;

11. In *United States v. Theriault,* 5 Cir. 1971, 440 F.2d 713, *cert. denied,* 1973, 411 U.S. 984, 93 S.Ct. 2278, 36 L.Ed.2d 960, we highlighted the critical distinction between psychiatrists appointed to assist the court and those appointed to assist the defense:

Sec. 4244 concerns examination to determine if the defendant is competent to stand trial. The court appoints a psychiatrist who examines the accused and reports to the court. Rule 28 authorizes the court to appoint its own expert witness, who is expected

to be neutral and detached. He advises the parties of his findings. See Rule 28 and Wright, Federal Practice and Procedure, § 452. The § 3006A(e) expert fills a different role. He supplies expert services "necessary to an adequate defense," which embraces pretrial and trial assistance to the defense as well as availability to testify. His conclusions need not be reported to either the court or the prosecution.

440 F.2d at 715.

their written reports were favorable to the defense.[12]

Immediately after the trial below commenced, Fessel moved to have his counsel relieved and he requested time to secure new counsel. The trial judge denied this request. The defendant then moved for a continuance, insisting, as well as he could, that his counsel's representation had been insufficient to permit preparation of an adequate defense. Indeed, he specifically cited his attorney's failure, despite his requests, to subpoena the records of his doctor from the New Jersey mental institution and to subpoena the government staff psychiatrists at El Reno and Springfield. The trial judge must have realized that the written reports of the El Reno and Springfield psychiatrists (which were allowed to be read into evidence) constituted the only hope for a verdict in favor of Fessel. The trial judge denied the motion on the ground that the request was "just purely for delay".

■ The result of this refusal to grant a continuance was to deprive the accused of the only testimony potentially effective to his defense. Through the favorable testimony of a psychiatrist appointed under § 3006A(e) to assist in his defense, or through the records of a private psychiatrist familiar with the appellant's condition shortly before his arrest, or through the live testimony of government staff psychiatrists who had examined him shortly after his arrest, Fessel was entitled to present expert medical evidence to support his insanity defense. The record shows that he expressly requested the trial judge to allow him to make this defense.[13] His attorney's failure adequately to prepare the defense could not constitute grounds for disqualifying Fessel from doing so, even at the price of some delay.

The government's suggestion that adequate psychiatric evidence was already available is unpersuasive. First, the defendant did not have the records of his New Jersey psychiatrist, the one doctor who had examined him shortly before the crime and who, presumably, was in the best position to testify as to his competence at the time of the alleged offense. Dr. Sparks' testimony that the appellant had been competent at the time of the offense was based on an evaluation made fifteen months after the offense, at a time when Fessel and all concerned conceded that he was competent. In light of the damaging testimony given by Dr. Sparks, the defendant was at least entitled to put on contrary evidence, particularly where the facts strongly suggest that such evidence would have been entitled to substantial weight.

We find equally unpersuasive the government's argument that any gaps in the evidence at trial were adequately filled by the written reports prepared by the government staff psychiatrists at the El Reno and

---

12. Dr. Samuel W. Hopkins, staff psychologist at the El Reno federal facility, examined the defendant in November 1973 and, after diagnosing him as schizophrenic, concluded:

This problem seems to have been present for some period of time and should be considered chronic. In my professional opinion, Ray Fessel has been continuously psychotic since he was admitted to a mental hospital in April 1973.

Dr. Larry Prater, also a staff psychiatrist at the El Reno facility, made a similar finding of "undifferentiated chronic schizophrenia", concluding that "[Fessel's] mental decomposition apparently dates back at least to the fall of 1971."

13. For example, the following abridged colloquy occurred:

MR. FESSEL: Your Honor, I want to bring up pertinent information that I believe that these psychiatrists if they were here, that they would tell you. . . .

THE COURT: What pertinent testimony will they give here? . . . [W]hat would you show by these witnesses that are absent if they were here?

MR. FESSEL: That I was insane in April 1973.

THE COURT: Now that transaction here took place on July the 1st, 1973? . . . Assuming they would say that at that time, what would they say on July 1st, 1973?

MR. FESSEL: I'm willing to state under oath what the doctor told my mother. . . . [T]he doctor let my mother know that he thought I was so seriously mentally ill, . . . that he did not think I would be mentally well until at least Christmas.

Springfield facilities. First, it should be noted that these reports were not prepared for the purpose of evaluating Fessel's competency at the time of the offense and were, therefore, not explicit on this issue. The information in the reports was sufficiently explicit however to indicate that, if called upon to testify, the staff psychiatrists might well have testified that the appellant had been incompetent at the time of the offense.[14] Fessel was certainly entitled to the opportunity to elicit such testimony from live witnesses. Second, it would be naive to assume that any juror would be as impressed by the self-serving statements of a defendant, even one reading from a doctor's report, as by the live testimony of an expert witness. In fact, it seems likely that the clarity and organization with which the appellant presented his own defense probably prejudiced his case in the eyes of the jurors who, confronted by an intelligent, articulate, and apparently competent young man, would have had particular difficulty believing that he had ever been incompetent.

■ In sum, we have no doubt that Fessel's motion for a continuance was made for the legitimate purpose of securing additional testimony and records necessary to his defense. Moreover, in light of his counsel's failure to secure such information before trial (despite Fessel's requests), or to request additional assistance through a court-appointed psychiatrist, the material took on critical significance. We conclude therefore that the trial judge's failure to grant the continuance to permit the defendant time to secure such information denied Fessel a fair trial and constituted an abuse of discretion warranting reversal.

The judgment below is REVERSED and REMANDED.