Richard C. LOE, Petitioner,

v.

UNITED STATES of America, Respondent.

Crim. A. No. 75–344–A.
Civ. A. No. 79–907–AM.

United States District Court,
E. D. Virginia,
Richmond Division.

June 29, 1982.

Gregory L. Murphy, Alexandria, Va., for petitioner.

Leonie M. Brinkema, Asst. U. S. Atty., Alexandria, Va., for respondent.

## MEMORANDUM

MERHIGE, District Judge.

Petitioner Richard C. Loe ("Loe") brings this proceeding under 28 U.S.C. § 2255 challenging the validity of his federal conviction and sentence on the ground that he was denied the effective assistance of counsel at his trial.

On August 23, 1977, Loe was convicted by a jury of the October 22, 1975 robbery of the Annandale, Virginia office of the Clarendon Bank and Trust Company in violation of 18 U.S.C. § 2113(a). At this trial, Loe was represented by counsel who had been appointed at his March 11, 1977 rearraignment.

Loe's conviction was affirmed by the Court of Appeals for the Fourth Circuit in *United States v. Loe,* 586 F.2d 1015 (4th Cir. 1978), *cert. denied,* 440 U.S. 927, 99 S.Ct.

1260, 59 L.Ed.2d 482 (1979). He then brought this § 2255 proceeding, claiming that he was denied the effective assistance of counsel because of his attorney's failure adequately to investigate and prepare defenses of incompetency to stand trial and insanity. After the Court denied relief, the Court of Appeals vacated the judgment, remanding the case to this Court to inquire into Loe's counsel's reasons for declining to seek a psychiatric examination of the defendant to determine if such failure denied defendant effective assistance of counsel. *United States v. Loe*, 639 F.2d 783 (4th Cir. 1981) (*per curiam*; unpublished).

On November 4, 1975, Loe was indicted by a grand jury for the Annandale robbery. He entered a guilty plea to this charge on November 28, 1975. On January 2, 1976, before sentence was imposed, Loe requested leave to withdraw his guilty plea. The Court denied the request and Loe appealed this decision.

While this appeal was pending, Loe was transferred to the custody of Virginia state authorities in connection with state charges arising out of the robbery of a Richmond branch of United Virginia Bank on October 6, 1975. The state authorities had Loe examined on April 6, 1976 by Dr. R. Finley Gayle, III, a professional psychiatrist, who concluded that Loe was not competent to stand trial. The state charges were dropped, and Loe was returned to federal custody.

The Court of Appeals for the Fourth Circuit then reversed the district court's refusal to allow Loe to withdraw his plea and remanded the case to permit him to enter a new plea to the Annandale charge. *United States v. Loe*, 551 F.2d 310 (4th Cir. 1977) (unpublished). On March 11, 1977, Loe was rearraigned. A new attorney was appoint-

ed to represent him after Loe's original court appointed attorney withdrew because of difficulties in working with him. Loe entered a plea of not guilty. Upon the government's motion, the Court, on March 15, 1977, ordered that Loe be given a psychiatric examination pursuant to 18 U.S.C. § 4244 to determine his present sanity and ability to assist in his own defense.

Pursuant to the Court's order, Dr. Enrich Reinhardt examined Loe for about thirty minutes at the Alexandria city jail on March 22, 1977. Dr. Reinhardt concluded that Loe was not capable of assisting in his defense, but recommended that he be examined further over an extended period of time to ensure that he was not feigning insanity. Consequently, on May 14, 1977, Loe was transferred to the Federal Correctional Institution at Springfield, Missouri to undergo mental examination and evaluation. After five weeks of observation, a team of doctors at Springfield concluded that Loe was competent to stand trial, and that he was accountable for his actions on the day of the Annandale robbery.[1]

Loe, through his counsel, filed a formal notice of insanity defense with the Alexandria court on July 7, 1977. His counsel also obtained authorization in two separate requests under 18 U.S.C. § 3006A(e) for the expenditure of funds to have Dr. Reinhardt and Dr. Gayle testify at Loe's trial as to his mental condition.[2] These § 3006A(e) requests were designed to ensure the attendance of these two psychiatrists at Loe's trial, and did not entail any additional examination or treatment of Loe. Loe's counsel proceeded to trial without requesting further psychiatric examinations under § 3006A(e) concerning either Loe's present mental condition or his sanity at the time of the robbery.

---

1. On June 15, 1977, the Chief of Psychiatry at the Springfield Medical Center, Jack Eardly, M.D., wrote to Judge Albert V. Bryan, Jr. relating that the opinion of the Springfield staff was that Loe was "mentally competent to stand trial and was responsible at the time of the alleged offense." Dr. Eardly endorsed the reports of the staff, one of which was signed by Nicola V. Kunev, M.D., and the other by Dr. Eardly. Loe's trial counsel received these re-

ports on June 21, 1977. *See* Affidavit by Loe's Counsel, at ¶ 7 (February 19, 1981).

2. 18 U.S.C. § 3006A(e) provides that counsel for an indigent person may obtain by *ex parte* application authorization for payment by the government for "investigative, expert, or other services necessary for an adequate defense...."

The first defense witnesses called by Loe's counsel at his August 23, 1977 trial were laypersons who testified about Loe's unusual past behavior. William Loe, the defendant's brother, related several episodes of erratic behavior[3] and described Loe's father's psychiatric problems,[4] Loe's twin brother's suicide and his sister's attempted suicide.[5] Joseph Bonucelli, a social worker who had been Superintendent of the Northern Virginia Detention Home in which Loe had been confined at one time, testified about Loe's attempted suicide at that institution through ingestion of aspirin.[6] Susan Cloud, Loe's girlfriend, related other instances of Loe's seemingly abnormal actions and stated that he was not under the influence of drugs or alcohol during all but one of the incidents.[7] Loe's friend, Thomas Van Walker, described a similar episode when the police were called, but could not be sure whether or not Loe was drinking at the time.[8]

Then, the defense raised the issue of Loe's competency to stand trial.[9] Out of the presence of the jury, Dr. Reinhardt testified to his belief that Loe was then unable to assist in his defense. This opinion rested on his thirty minute interview with Loe five months before, reports he had reviewed from Springfield and a state hospital, letters recently received from Loe, and his observation of Loe's courtroom demeanor. After cross-examination emphasized the brevity and staleness of Dr. Reinhardt's March examination, the Court concluded that Loe was competent to stand trial.

The jury was then returned to the courtroom and heard Loe's expert testimony regarding his insanity defense. Dr. Gayle stated that he interviewed Loe for only 30–45 minutes and that he simply recommended that he be further examined. The Court of Appeals for the Fourth Circuit concluded that "[a]s a practical matter, Dr. Gayle admitted that he had no opinion on Loe's present capacity or his sanity at the time of his offense."[10]

Testimony by Dr. Reinhardt, who had examined Loe in March of 1977 pursuant to the Court's order under 18 U.S.C. § 4244, followed. His examination was directed only at determining Loe's capacity to stand trial, and Dr. Reinhardt testified that his observation then had not been sufficient to reach a diagnostic impression or opinion as to Loe's mental condition at the time of the crime. He stated only that Loe was a victim of "preoccupied unstable mental condition with paranoid features" and that he was incompetent in March of 1977 and presently incompetent.[11] As the Court of Appeals concluded, there was no expert opinion presented by the defense on Loe's accountability for his actions at the time of the offense.[12]

The government presented several witnesses in rebuttal to this insanity defense. A Richmond police officer testified that Loe had made statements to him shortly after he met with Dr. Gayle that he had "fooled" the psychiatrist into thinking that he was insane.[13] Three lay witnesses testified that Loe had not appeared to be acting abnormally at the time of the bank robbery and just before the trial. Dr. Kunev, a member of the psychiatric staff at Springfield, testified that, based on the observation at that

3. Tr. at 74–75.

4. Tr. at 69.

5. Tr. at 76.

6. Tr. at 84–85.

7. Tr. at 92–96.

8. Tr. at 96–100.

9. Loe's counsel stated that "[a]s a result of the Springfield report and in talking to Dr. Reinhardt recently, I just was surprised to find it was his continuing belief he is incompetent to stand trial." Tr. at 104.

10. *United States v. Loe*, 639 F.2d 783 (4th Cir. 1981) (unpublished), at 6.

11. Tr. at 137.

12. *United States v. Loe, supra*, 639 F.2d 783 note 10, at 6.

13. At the trial, Loe's counsel elicited from Dr. Gayle the latter's opinion that such statements by Loe "wouldn't necessarily make him sane or responsible...." Tr. at 133.

facility, Loe was both competent and sane in October, 1975.

The jury rejected Loe's insanity defense and returned a verdict of guilty. On January 9, 1978 Loe was sentenced to sixteen years imprisonment under 18 U.S.C. § 4205(b)(2), to run concurrently with an identical sentence imposed on that date for Loe's conviction on a federal charge arising out of the robbery of the Richmond bank.

■ In its opinion remanding the case to this Court, the Court of Appeals stated that "the only real issue..." at Loe's trial was his sanity at the time of the robbery. Seeing a need for a private psychiatric examination directed at determining this issue, the Court concluded that Loe's counsel's decision in presenting an insanity defense to rely solely on Dr. Gayle's and Dr. Reinhardt's incomplete observations in the face of government evidence derived from nearly six weeks of observation required explanation. Thus, this Court was directed to inquire into "counsel's reasons for declining to seek further psychiatric examinations to the end that it may be determined if Loe received effective assistance of counsel."[14] Of course, the sixth amendment guarantee of the right to counsel includes the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *United States v. Fisher*, 477 F.2d 300 (4th Cir. 1973).

■ In this jurisdiction, the test of the effectiveness of counsel is whether the attorney's representation "was within the range of competence demanded of attorneys in criminal cases." *Marzullo v. Maryland*, 561 F.2d 540, 543 (4th Cir. 1977), *cert. denied*, 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978), quoting from *McMann v. Richardson, supra*, at 770–71. Effective representation does not require errorless representation. To merit relief, Loe must show that any error by his attorney "was so flagrant that a court can conclude that it resulted from neglect or ignorance rather than from informed, professional deliberation." *Marzullo v. Maryland, supra*, at 544. *See Via v. Superintendent, Powhatan Correctional Center*, 643 F.2d 167, 171 (4th Cir. 1981). The standard is an objective description of the competency normally demanded of attorneys. It is a flexible test, but counsel must perform at least certain specifics, *e.g.*, counsel should be promptly appointed for an indigent defendant, he should be given a reasonable opportunity to prepare to defend the defendant, he must confer with the defendant without undue delay and as often as necessary to advise him of his rights and elicit matters of defense or ascertain that potential defenses are unavailable, and he must conduct appropriate factual and legal investigations to determine if certain defenses can be used. *Marzullo, supra; Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir.), *cert. denied*, 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968). A court may also refer to state bar canons and the American Bar Association Standards Relating to the Defense Function to gauge the adequacy of counsel's representation. *Marzullo, supra*.

■ Counsel has an affirmative obligation to make further inquiry where the facts known and available, or with minimal diligence accessible, to defense counsel raise a reasonable doubt as to the defendant's mental condition. "If reasonable grounds exist for questioning the sanity or competency of a defendant and counsel fails to explore the matter, the defendant has been denied effective assistance of counsel." *Wood v. Zahradnick*, 430 F.Supp. 107, 111 (E.D.Va.1977), *affirmed*, 578 F.2d 980 (4th Cir. 1978). *See Kibert v. Peyton*, 383 F.2d 566, 569 (4th Cir. 1967); *Owsley v. Peyton*, 368 F.2d 1002, 1003 (4th Cir. 1966); *McLaughlin v. Royster*, 346 F.Supp. 297 (E.D.Va.1972).

It is undisputed that the facts in this case did give rise to a reasonable doubt as to

---

**14.** *United States v. Loe, supra* note 10, at 8.

Loe's mental condition and a correspondent duty on the part of his counsel to make further inquiry to determine if the defense of insanity should be raised, and if so, to develop the defense adequately. Loe's counsel did make this inquiry. He did his first research on Loe's possible insanity defenses on March 12, 1977, the day after his appointment. He visited Loe in jail on March 4, 1977 and discussed his case with the United States Attorney's office on March 15, 21 and 22, 1977. He discussed Dr. Reinhardt's report on his § 4244 examination of Loe with the United States Attorney on March 22, 23 and 25, and did further insanity research on March 23. Further visits to Loe followed. Loe's counsel requested the U.S. Attorney to have Loe evaluated as to his competency to stand trial and his state of mind at the time of his offense while at the Springfield facility.[15] Having received and reviewed the Springfield report on June 21, 1977, he attempted to contact Dr. Reinhardt on several occasions and did communicate with all the social services and correctional institutions that had seen Loe in the past, requesting Loe's medical records. Counsel discussed the Springfield report and the aspects of Loe's case with Dr. Reinhardt on July 1, 1977. Further conversations were had with other attorneys experienced in the presentation of an insanity defense and the attorney who had represented Loe in the state proceedings which were dismissed on the strength of Dr. Gayle's finding of incompetency. More research on the defense took place on July 5 and 6. As noted above, Loe's counsel filed notice of the insanity defense on July 7, 1977, and obtained authorization under § 3006A(e) to compensate Dr. Reinhardt and Dr. Gayle for their presence at Loe's trial. From that time to the August 23 trial date, counsel had many discussions with Loe and interviews with witnesses, and received medical reports on Loe's mental history.[16]

Thus, this is not a case where counsel failed to pursue a possible insanity defense, for Loe's counsel invested substantial effort in developing the issue. Nor is this an instance of failure to raise the defense at trial to present the evidence of doubt as to Loe's mental condition to the court and the jury. Loe's counsel did produce at the trial the evidence and testimony he had, in the manner described above. The central issue in this proceeding, then, is whether counsel's failure to seek a private examination of Loe under § 3006A(e) rendered his presentation of the defense inadequate and his representation of Loe ineffective. Under *Marzullo*, Loe must establish that his counsel's failure to pursue this examination constituted an error "so flagrant that a court can conclude that it resulted from neglect or ignorance rather than from informed, professional, deliberation." *Marzullo, supra*, at 544.

■ The Criminal Justice Act of 1964, 18 U.S.C. § 3006A, was enacted to "assure adequate representation in the Federal courts of accused persons with insufficient means." S.Rep.No. 346, 88th Cong., 1st Sess. 1, (1963). Psychiatric assistance is one of the expert services available to an indigent defendant under § 3006A(e), so that the accused may be afforded the reasonable opportunity to procure the services of a psychiatrist to aid him in his defense. Even if there has been a § 4244 examination of the defendant to determine his capacity to stand trial, there may be, and in some cases should be, an appointment of a psychiatrist under § 3006A(e) to ascertain the defendant's mental condition at the time of the offense, in light of the different natures of the two inquiries and the dissimilar perspectives of the experts involved. *United States v. Reason*, 549 F.2d 309, 311 (4th Cir. 1977). Examination for competence to stand trial is a limited inquiry into a defendant's present mental condition, while the determination of possible lack of criminal responsibility at the time of the offense involves a complex evaluation of the defendant's total personality at a previous point in time and requires that the expert

---

**15.** Affidavit by Loe's Counsel, ¶¶ 5–6.

**16.** *Id.* at ¶¶ 7, 9–12.

have a "substantial opportunity" to observe the defendant. *United States v. Walker*, 537 F.2d 1192, 1195 (4th Cir. 1976). The § 4244 expert is expected to be neutral and detached, but the § 3006A(e) examiner can be a partisan witness for the defense. *United States v. Reason, supra*, at 311.

■ In the instant case, Loe's counsel requested that the § 4244 examination consider both capacity to stand trial and responsibility at the time of the offense. The five weeks of evaluation at Springfield, based on Dr. Reinhardt's suggested need for further study, gave the doctors at that facility an extended observation of Loe and produced a report containing findings as to both present mental condition and state of mind at the time of the crime. Thus, the real harm, if any, to Loe by counsel's failure to request an examination of Loe by a private psychiatrist under § 3006A(e) would be that such failure deprived him of the partisan perspective of a § 3006A(e) examiner.

In *Proffitt v. United States*, 582 F.2d 854, 857 (4th Cir. 1978), *cert. denied*, 447 U.S. 910, 100 S.Ct. 2997, 64 L.Ed.2d 860 (1980), the Court of Appeals, after discussing the psychiatric services available to an indigent defendant under § 3006A(e), held that "the failure of defense counsel to seek such assistance when the need is apparent deprives an accused of adequate representation in violation of his sixth amendment right to counsel." Quoting from *United States v. Fessel*, 531 F.2d 1275, 1279 (5th Cir. 1976), the court ruled that the § 3006A(e) exami-

nation is required, and defense counsel has the duty to seek it, "whenever the services are 'necessary to the preparation and presentation of an adequate defense.' " *Id.* 582 F.2d at 857. The resolution of the instant proceeding, then, turns on whether the need for a § 3006A(e) examination was "apparent" and "necessary to the preparation and presentation of an adequate defense" in Loe's case, and whether Loe's counsel's reasons for not obtaining an exam were the result of informed deliberation or of neglect or ignorance.

The record reveals that Loe's counsel originally intended to seek authorization under § 3006A(e) for a private psychiatric examination of Loe to evaluate both his competence to stand trial and his mental condition at the time of the offense. At a hearing before the Court on June 27, 1977, after he had received the Springfield report, Loe's counsel requested the evaluation and indicated a "great possibility" that an insanity defense would be asserted, but suggested that the matter be brought up on a later motions day. The Court, seeing no reason for such delay, directed Loe's counsel to inform the Court of his preferred examiner and the order approving the appointment would be entered. The closing statements of the hearing reveal the following exchange:

> THE COURT: The defendant is remanded to the custody of the United States Marshal, and you will present that order to me, will you, sir?
>
> [LOE'S COUNSEL]: Yes, I will.[17]

17. Transcript of Proceedings, June 27, 1977, at 4. The relevant portion of the transcript at 3–4 is as follows:

> THE COURT: I will set it for trial by jury. I will direct any motions to be filed, be filed within ten days. I will set those motions for July 22.
>
> There has been a question concerning the defendant's competency. I have received the report on that.
>
> Mr. [Loe's Counsel], do you want to be heard?
>
> [LOE'S COUNSEL]: I have seen those reports, Your Honor.
>
> THE COURT: Do you want to be heard further on that issue?

> [LOE'S COUNSEL]: I didn't know it was proper at this time. I would request a private psychiatric evaluation from someone not affiliated with the Government.
>
> I would think that would be brought up on motions day, Your Honor.
>
> THE COURT: Well, I see no reason to wait for that. Are you contemplating asserting an insanity defense? I don't ask you to commit yourself one way or another, but if you think that it might be—.
>
> [LOE'S COUNSEL]: (Interposing) There is a great possibility, yes, sir.
>
> THE COURT: I see no reason to wait until July 22 for that, because we are approaching the trial date.
>
> [LOE'S COUNSEL]: Yes, sir.

The order, however, was never prepared. Counsel conferred with Dr. Reinhardt on July 1 to discuss the Springfield report. Dr. Reinhardt pointed out the necessary inconclusiveness of psychiatric findings of sanity, causing Loe's counsel to decide that the "appropriate strategy" in the case was to collect Loe's medical records, explore the use of lay testimony on Loe's mental condition around the time of the robbery, and to rely on "cross-examination of the Government's expert mental witnesses to sow doubt about the conclusiveness of their findings of sanity." [18] He planned to rely at trial on Dr. Reinhardt's and Dr. Gayle's expert testimony, along with that of lay witnesses, all of which "dated from times closer to . . . the bank robbery than the psychiatric testimony to be offered by the Government." [19] Thus, to counter the prosecution's Springfield conclusion of sanity at the time of the offense, Loe's counsel intended to use Dr. Reinhardt and Dr. Gayle to show the defendant's "impaired mental judgment," contemporaneous observations of lay witnesses, and records of Loe's past psychiatric evaluations to show "evidence of behavorial distortions." [20] Counsel also hoped to disparage the conclusiveness of the Springfield findings, and to respond to the government's evidence that Loe had stated he had "fooled" Dr. Gayle by testimony by Dr. Gayle and Dr. Reinhardt that such statements did not necessarily indicate sanity.[21]

Loe's counsel now states that he decided not to have Loe examined by his own § 3006A(e) psychiatrist because he felt it would not produce results helpful to the defendant. Counsel felt that the findings of the Lewisburg reports and the other records were consistent with the Springfield evaluation, and that "any further evaluation of Mr. Loe's mental condition would be highly likely to confirm these psychiatric reports." Because of the evidence that Loe had stated that he had "fooled" Dr. Gayle, counsel concluded that additional expert examinations would be "fruitless." [22] In short, Loe's counsel did not follow through on his § 3006A(e) request because he concluded, based on all the psychiatric evidence at hand, that another examination would not strengthen his insanity defense. This, of course, was a tactical decision, and courts

THE COURT: If you will let me know whom you would like and make sure that he can meet not only the July 22 hearing but the August 3 trial date, if necessary, then I will enter the order approving his appointment.

[LOE'S COUNSEL]: Yes, your Honor.

THE COURT: The defendant is remanded to the custody of the United States Marshal, and you will present that order to me, will you, sir?

[LOE'S COUNSEL]: Yes, I will.

THE COURT: Court will stand adjourned.

18. Affidavit of Loe's Counsel, at ¶ 10.

19. *Id.*

20. *Id.* at ¶ 12. These records resulted from stays at Eastern State Hospital in Williamsburg, Virginia, Western State Hospital in Staunton, Virginia, and Lewisburg Federal Penitentiary in Lewisburg, Pennsylvania. At age 15, Loe was admitted to Eastern State on March 3, 1966 by court order. The hospital's report (Exhibit K–1 to Affidavit of Loe's Counsel), sent to Loe's counsel on June 30, 1977, stated that Loe was of coherent thinking, normal feeling, good insight and "oriented in all spheres." The institution's impression was that Loe suffered only from a transient situational personality disturbance as an adjustment reaction to adolescence. Loe was committed by court order to Western State Hospital on April 25, 1966 and discharged on June 28, 1966 as Not Mentally Ill. This record was sent to Loe's counsel on July 6, 1977. (Exhibit K–1 to Affidavit). Mickey Silver, M.D., a Lewisburg psychiatrist, examined Loe on December 20, 1976 and found "no evidence of a major mental illness." (Exhibit L to Affidavit). The same conclusion was reached by Dr. Milton Schmidt, also a Lewisburg psychiatrist, in his May 11, 1976 report on Loe. (Exhibit M to Affidavit). Lastly, a May 19, 1976 report by Dr. Schmidt reveals that he had examined records from "a recent state trial in which doubts of Mr. Loe's competency were expressed by a psychiatrist, . . ." but that his opinion remained unchanged. Though Loe was "quite uncooperative, vague, and evasive...," he had shown "no signs of psychosis or major mental illness..." at the time of the Schmidt report (Exhibit N to Affidavit). Loe's counsel realized after reviewing these records that "in none of these situations had ... Loe ever been judged insane." Affidavit at ¶ 12.

21. Affidavit by Loe's Counsel, at ¶ 12.

22. *Id.*

are reluctant to second guess the tactics of trial lawyers. Such a course is required here, however, if the tactical decision was so unreasonable in light of the need for the evidence that it amounted to a denial of the right to counsel within the range of competence demanded of attorneys in criminal cases. *Goodson v. United States,* 564 F.2d 1071, 1072 (4th Cir. 1977).

Other courts have addressed the question of whether a failure to obtain a psychiatric examination of a criminal defendant amounts to denial of effective assistance of counsel.

The indigent defendant in *Proffitt v. United States, supra,* was also charged with two separate bank robberies. After a conviction in the first trial despite a reasonable doubt defense, Proffitt's court-appointed counsel discussed with him the possibility of using an insanity defense at the second trial. The attorney reasoned that if he sought public funds under ·§ 3006A(e) for a psychiatric examination of the defendant, the government would be alerted to the insanity defense and request its own exam. He felt that if the psychiatrist were retained with private funds, he could present the defense without giving notice to the prosecution.[23] Thus, he conditioned his investigation and presentation of an insanity defense on the defendant's provision of a $5,000.00 fee to retain him as defendant's private counsel and a $5,000.00 fee for a psychiatrist. When the defendant failed to produce the money, the attorney declined to investigate the insanity defense, never brought it to the court's attention and no such defense was raised at the defendant's second trial. The Court of Appeals ruled that by conditioning the investigation and presentation of an insanity defense upon the payment of the fees, Proffitt's attorney failed to render adequate representation. The court rejected the government's argument based on the attorney's belief that the defendant was not so mentally ill that the defense would have succeeded on the grounds that the lawyer lacked the education and experience definitely to diagnose Proffitt's mental condition and instead had a duty to move for a psychiatric examination.

*Wood v. Zahradnick, supra,* also involved the failure to obtain an examination of an indigent defendant coupled with the omission to raise the insanity defense at trial. There, the defendant was convicted of the rape, robbery and brutal beating of a 67-year old woman whom he had known his entire life, and there was evidence that he may have been suffering from alcoholic pathological intoxication at the time of the crimes. Nonetheless, the defendant's attorney failed to investigate this possibility, relying instead on a defense consisting of the defendant's testimony on his heroin addiction and his inability to recall the events of the night in question. Apparently, the attorney declined to pursue the insanity defense because he did not think that the defendant was insane at the time of the crime. Ruling that the attorney's personal opinion carried little weight in light of his failure to seek an expert evaluation provided by Virginia law,[24] the district court held that counsel's failure to investigate or raise the defenses of insanity and incompetence amounted to a denial of effective assistance of counsel.[25] The Court of Appeals, emphasizing that counsel may not rely on his personal opinion and that insanity was the only defense available to the defendant, affirmed the lower court's decision.[26]

In *United States v. Edwards,* 488 F.2d 1154 (5th Cir. 1974), the defendant was convicted by a jury of conspiracy to rob and robbery of a bank. His court-appointed counsel requested a § 3006A(e) appointment of a private psychiatrist to aid in the preparation of the defense, because of an earlier mental examination of the defendant and reports from his counsel in another criminal case. The court granted the re-

---

**23.** This case arose before the effective date of F.R.Crim.P.Rule 12.2.

**24.** Va.Code § 19.2–169.

**25.** 430 F.Supp. at 112.

**26.** 578 F.2d at 982.

quest and appointed a psychiatrist to examine the defendant. Later, however, the doctor erroneously reported his finding that the defendant was sane at the time of the crime and competent to stand trial directly to the court, rather than to the defendant and his counsel alone, and the court incorrectly treated the matter as one coming under § 4244 and adjudicated the defendant competent to stand trial under that section. Edwards' counsel never again raised the insanity issue or objected to the court's mishandling of the request for expert assistance. On appeal, the court excused the district court's error on the ground that defendant's counsel never objected to the error, thus forcing the court to reach the ineffective assistance of counsel question. It held that the attorney's failure to pursue his successful § 3006A(e) motion and to object to the court's error deprived Edwards of effective counsel, and that by these inactions he was denied the full benefit of the statute. The court also reasoned that the attorney's doubts about the defendant's mental condition "could not have been so clearly resolved by the [psychiatrist's] report ... as to justify a complete abandonment of the § 3006A(e) motion." 488 F.2d at 1164.

The defendant in *United States v. Fessel, supra,* was charged with the possession with intent to distribute and the importation of marijuana. Arrested in July, 1973, the defendant was committed under 18 U.S.C. § 4246 by the court, after setting aside a guilty plea on incompetency grounds, until he was competent to stand trial. After months of observation and treatment by psychiatrists at two medical centers for federal prisoners,[27] Fessel was adjudicated competent and proceeded to trial in December, 1974. At trial, the only live expert testimony on the defendant's state of mind at the time of the offense was that of a psychiatrist who examined the defendant in October, 1974 at the court's request and concluded that he was mentally responsible at the time of the offense. The defendant was allowed to read from reports prepared by staff psychiatrists at the federal centers, but his court-appointed attorney failed to depose or subpoena a private psychiatrist who had seen the defendant shortly before the offense and never sought § 3006A(e) authorization for a private examination of the defendant. On appeal, the court held that counsel's failure to move for a § 3006A(e) appointment deprived the defendant of testimony necessary to prepare his defense and thus fell below the minimum level of representation guaranteed by the Sixth Amendment. The court felt that the appropriateness of an insanity defense was obvious because the evidence showing that defendant committed the crime was almost uncontested. Furthermore, the court concluded that the need for psychiatric assistance to prepare the defense was equally apparent, stating that "[i]n the absence of live psychiatric testimony favorable to the defendant, the need for a § 3006A(e) motion was manifest." 531 F.2d at 1279.

Lastly, the Court notes a case in which the failure to seek a § 3006A(e) examination was held not to constitute a denial of the right to effective assistance of counsel. In *United States v. Fratus,* 530 F.2d 644 (5th Cir.), *cert. denied,* 429 U.S. 846, 97 S.Ct. 130, 50 L.Ed.2d 118 (1976), the defendant was indicted on charges of bank robbery with a dangerous weapon. After arrest, court-appointed defense counsel requested a § 4244 examination of the defendant on October 15, 1974. The § 4244 psychiatrist's report resulted in a court finding of incompetence to stand trial and an order committing the defendant to the Springfield, Missouri facility until he became able to aid in his defense. In February, 1975, upon motions by the defense and the government, the defendant was examined by a different psychiatrist, again found incompetent and was recommitted to Springfield. Finally, in June, 1975, defense counsel moved for another § 4244 examination, another psychiatrist was appointed, and defendant was found competent to stand trial. At trial, defense counsel, to support an insanity de-

---

**27.** The centers were located in El Reno, Oklahoma and Springfield, Missouri.

fense, presented the live testimony of the two psychiatrists appointed under the first two § 4244 motions, who had concluded both that the defendant was incompetent to stand trial *and* was not mentally responsible for his actions at the time of the offense. The jury, after hearing this testimony and that of a government psychiatrist that defendant was not legally insane at the time of the crime, rejected the insanity defense and returned a verdict of guilty. On appeal, the defendant argued that his attorney's failure to move for a § 3006A(e) appointment constituted ineffective assistance of counsel. The court disagreed, on the ground that the defendant's attorney had available to him, for the purpose of preparing his defense, the testimony of the two court-appointed psychiatrists who had found *defendant to be legally insane.*

The Court concludes that the instant case falls more closely to the *Proffitt, Wood, Edwards* and *Fessel* line of cases than it does to *Fratus.* Loe's counsel's failure to pursue his successful § 3006A(e) motion meant that there was only one expert determination of Loe's mental condition at the time of the offense—the government's Springfield evidence. It also meant that the only live psychiatric testimony at trial as to Loe's mental responsibility at the time of the crime was that of Dr. Kunev, a government witness. As in *Edwards,* the Springfield conclusions could not have so clearly resolved the issue as to justify the abandonment of a § 3006A(e) motion made here with those conclusions already in mind. As in *Fessel,* non-use of the § 3006A(e) option deprived the defendant of any live psychiatric testimony on his mental condition at the time of the offense. Unlike *Fratus,* counsel here did not have the expert testimony of two doctors who could say that the defendant was insane at the time of the crime. Loe's counsel planned to and did rely on testimony by Dr. Reinhardt and Dr. Gayle to show Loe's "mental impairment," but they could give no opinion on the key issue of insanity. Thus, the § 3006A(e) examination was necessary to the adequate preparation of an insanity defense.

As stated, Loe's counsel failed to follow up his § 3006A(e) request because he felt that any further examination of Loe would merely confirm the Springfield results. If this was a strategic, tactical decision, the Court concludes that it was an unreasonable one in light of the defendant's need for the results of the examination. The Court is mindful of the critical interrelation between expert psychiatric assistance and minimally effective representation of counsel. *Fessel, supra,* at 1279. Just as the lay opinion of an attorney as to his client's state of mind carries little weight, *Proffitt, supra, Wood, supra,* his speculation as to the outcome of an expert examination should be given little credence as well. In Loe's counsel's situation, facing the government's evidence based on nearly six weeks of observation, the need for the permissibly defense-oriented perspective of the § 3006A(e) expert was most acute. Sanctioning the abandonment of a § 3006A(e) motion because of a lay belief that its results would merely confirm the government's evidence would effectively vitiate the legislative purpose of providing the indigent defendant with his own expert. Counsel's failure to pursue his request thus denied Loe the full benefit of the statute and amounted to a denial of the minimum level of representation guaranteed by the sixth amendment.

▆ There remains only the question of the remedy to which Loe is entitled at this stage. This jurisdiction has long adhered to the rule that denial of the effective assistance of counsel vitiates a conviction and entitles a defendant to a new trial unless the state or the government can establish lack of prejudice thereby. *See Coles v. Peyton,* 389 F.2d 224 (4th Cir.) *cert. denied,* 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968), *cf. United States v. Wood,* 628 F.2d 554, 559 (D.C.Cir.1980) (burden is on the defendant to show that counsel's substantial breach was likely to have resulted in prejudice to his case); *United States v. DeCoster,* 624 F.2d 196, 215 (D.C.Cir.1976) (defendant must demonstrate a likelihood of effect on the outcome). The Court of Appeals in *Wood v. Zahradnick, supra,* 578

F.2d at 982, after ruling that defense counsel's failure to seek a psychiatric examination of the defendant amounted to a denial of the effective assistance of counsel, remanded the cause to the district court in order to procure an examination of the defendant. This procedure was followed, said the court, to give the State of Virginia the opportunity to show that the attorney's failure to seek the examination was "harmless beyond a reasonable doubt," which would be demonstrated if the exam ordered by the Court resulted in a "competent determination..." that the defendant was not subject to a psychotic reaction to alcohol. 578 F.2d at 982.

▆ The *Proffitt* court indicated that similar relief should be ordered where it is "possible that a thorough examination would not have assisted defense counsel in preparing an insanity defense." 582 F.2d at 859. Since Loe, like Proffitt, was "denied not the opportunity to present a defense, but the opportunity to determine with expert help whether he had a defense worth presenting," 582 F.2d at 859, quoting *United States v. Taylor*, 437 F.2d 371, 379 (4th Cir. 1971), the Court will pattern its relief after that ordered in *Proffitt*. Accordingly, a private psychiatrist will be appointed to examine Loe to determine, his mental state at the time the offense was committed. If his or her report "indicates

the existence of a substantial question of criminal responsibility, ..." and if Loe's counsel represents that he would rely on it on retrial,[28] the Court's judgment will be vacated and a new trial granted. 582 F.2d at 859. Otherwise, Loe's judgment of conviction will stand affirmed.[29]

An appropriate order will issue.

---

**28.** The Court notes that the government may elect to retry Loe despite the difficulty in determining his mental state at the time of the offense because of the passage of time. *Wood v. Zahradnick*, 611 F.2d 1383 (4th Cir. 1980).

**29.** During the pendency of the instant petition, the Court has been plagued with many *pro se* pleadings from Loe filed without consultation with or the knowledge of counsel appointed to aid him in this proceeding. One such pleading was a "Supplemental Brief" filed after the evidentiary hearing on the original petition was held, in which Loe argues that his trial counsel's failure to request during the trial that Loe be again examined under § 4244 to determine his competency to stand trial denied him the effective assistance of counsel. Loe relies on Dr. Reinhardt's trial testimony that he had received certain records and letters directly from Loe on the day before trial which confirmed his impression that Loe was a paranoid schizophrenic and presently incompetent to stand trial. Tr. 106–109; 120–123. Loe contends that

his counsel's failure, in light of this testimony and the fact that time had lapsed between his final evaluation at the Springfield facility under § 4244 on June 3, 1977 and his August 23, 1977 trial, to request a second examination under § 4244 was without the range of competence demanded of attorneys in criminal cases. Loe raised this argument in his original § 2255 petition filed with the Court on November 7, 1979. Loe appealed the Court's denial of any relief on this petition. Apparently the Court of Appeals for the Fourth Circuit similarly saw no merit in Loe's claim, for in its opinion it noted that "the only real issue at trial was Loe's sanity at the time of the robbery," and the court remanded the case to this Court to determine counsel's reasons for failing to obtain a § 3006A(e) examination of Loe to assess his mental state at the time of the offense. The Court thus declines to reconsider the substance of Loe's § 4244 argument.