## Richmond

### Everett Augustus Scales v. Commonwealth of Virginia.

April 22, 1974.

Record No. 730305.

Present, All the Justices.

*J. Flowers Mark (James M. Lowe; George L. Shetler; Cullen B. Jones, Jr.; Lowe & Mark,* on brief), for plaintiff in error.

*Robert E. Shepherd, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

Everett Augustus Scales was indicted by a grand jury in the lower court for the distribution of heroin. He filed with the court a motion to quash the indictment on the ground that the grand jury had been unconstitutionally constituted. A hearing was had and the defendant's motion was denied.[1] Scales was found guilty of the offense charged and brings this appeal to contest the denial of his motion.

---

[1] In the court below testimony was taken pursuant to motions to quash indictments filed in the cases of *Commonwealth* v. *Peterson, et als.* The motions challenged the constitutionality of grand juries in the City of Alexandria. The Honorable Arthur W. Sinclair, sitting as Judge Designate, denied the motions. By stipulation the entire

Defendant contends that the grand jury which returned his indictment was improperly constituted because certain segments of the population of Alexandria were inadequately represented on the grand jury list from which his grand jury was drawn. More specifically, he claims underrepresentation of women and persons between the ages of 21 and 41 years, and overrepresentation of the socially and economically privileged. He introduced no evidence as to the composition of individual grand jury panels and no evidence as to the composition of the grand jury that indicted him. His argument is simply that the system used resulted in unconstitutional discrimination against members of what he claims are legally cognizable or identifiable groups.[2]

At the time defendant's indictment was returned Code § 19.1-148 directed that the judge of the lower court should annually, in the months of June, July and August, select 60 persons from the City of Alexandria who were at least 21 years of age, honest, intelligent, of good demeanor and suitable in all respects to serve as grand jurors for the city for 12 months next thereafter.[3] Senior Judge Franklin P. Backus testified that in the preparation of the list of persons to serve on grand juries he sought to obtain suitable persons of honesty, intelligence and good demeanor and to have a representative grand jury; that the list was constituted of "men and women, Black and White people, Jews and Christians, Catholics and Protestants"; that the City of Alexandria is divided into wards, and he gave proportional representation to each ward. The judge indicated that he received names of prospective grand jurors from "many, many sources" and, although

record in *Peterson* was incorporated and made a part of the record in the case under review. The trial judge in the instant case reaffirmed Judge Sinclair's prior ruling in the *Peterson* case, and thereafter found the defendant guilty of the offense charged and imposed sentence which was suspended upon certain conditions.

[2] The defendant introduced into evidence the grand jury lists used in Alexandria from 1967 to 1972, and called as witnesses 47 of the grand jurors whose names appear on the 1971-72 list. He established that although 60% of the inhabitants of the city eligible for grand jury service in 1971-72 were between the ages of 21 and 44 years of age, only 10% of the grand jurors were 44 or younger; that the mean age of the population over 21 was 44.47 years whereas the mean age of the grand jurors was 58.34; that although 52.9% of the population over the age of 21 years were women, only 10% of the grand jurors were women; that the average real estate holdings of the grand jurors in the city was $74,000 and their average length of residence in the city was 40 years; that 85% of the grand jurors occupied their own homes as compared with 26% occupancy by the residents of the city; that 72% of the grand jurors occupied professional or managerial positions, contrasted with 35% of the city's population so employed; and that blue collar workers composed 29% of the work force in Alexandria but constituted only 3.2% of the grand jury list membership.

[3] Code § 19.1-148 was amended in 1973 to lower the age for grand jury eligibility from 21 years to 18 years, and to delete a provision which formerly gave citizens over 70 years the privilege of declining service as grand jurors.

he attempted to come up with a "cross-section", he did not select people according to any mathematical formula. He did not consider age, home ownership, social position, income or length of residence in Alexandria. He knew most of the people on the grand jury personally or by reputation and consulted with his associate judges and numerous others before compiling the list of names.

Fifteen percent of the grand jurors on the 1971-72 list were blacks whereas this race comprised only 11.1% of the city's population 21 years of age and older. Judge Backus testified that this was "happenstance" for while he considered race in making his selections he did not make any conscious effort to achieve a racial proportion.

Scales contends that the cross-sectional concept applies as a constitutional mandate in the selection of grand juries to serve in state courts. He says that grand jurors should be drawn from a panel that represents a cross section of the community and includes persons with varying degrees of training and intelligence and with varying economic and social positions. For this he relies on Mr. Justice Murphy's dissent in *Fay* v. *New York*, 332 U. S. 261, 296-300 (1947), and cites numerous cases including *Ballard* v. *United States*, 329 U. S. 187 (1946); *Thiel* v. *Southern Pac. Co.*, 328 U. S. 217 (1946); *Glasser* v. *United States*, 315 U. S. 60 (1942); and *United States* v. *Butera*, 420 F. 2d 564 (1st Cir. 1970).

These cases are inapposite for they deal with juries in federal courts, involve the exercise by the Supreme Court of its supervisory power over lower federal courts, or are predicated upon an interpretation of the federal jury selection statutes. We are not concerned here with petit juries or the requirement imposed by court decisions and congressional enactment upon the composition of juries in the federal courts.

A grand jury performs an entirely different function from that performed by a petit jury. A grand jury is required by the Constitution of the United States only where an accused is called upon to answer *in a federal court* for a capital offense or other infamous crime. The Constitution imposes no such requirement upon the states. *Hurtado* v. *California*, 110 U. S. 516 (1884). While Code § 19.1-162 prevents the trial of a person on a felony charge except upon a presentment or indictment found by a grand jury, unless presentment or indictment is waived, this is purely a statutory requirement and is not predicated upon any guarantee or provision found in the Constitution of Virginia. *Benson* v. *Commonwealth*, 190 Va. 744, 58 S. E. 2d 312 (1950).

■ Notwithstanding the absence of constitutional mandates, there can be no arbitrary and systematic exclusion of persons from juries whether those excluded be of a particular race or of a particular class, or whether the exclusion results from legislative action or from arbitrary and capricious action of those charged with providing grand jury lists. Arbitrary, unreasonable, invidious or capricious discrimination is constitutionally impermissible. *Hernandez* v. *Texas*, 347 U. S. 475 (1954); *Fay* v. *New York, supra; Hill* v. *Texas*, 316 U. S. 400 (1942); *Norris* v. *Alabama*, 294 U. S. 587 (1935); *Neal* v. *Delaware*, 103 U. S. 370 (1881); *Strauder* v. *West Virginia*, 100 U. S. 303 (1880); *Witcher* v. *Peyton*, 405 F. 2d 725 (4th Cir. 1969).

It is admitted that there was no discrimination here because of race, color, creed or religion. Counsel for the defendant conceded that Judge Backus, in constituting the grand jury list for the City of Alexandria, complied fully with the statutes of Virginia and selected qualified citizens who were honest, intelligent and of good demeanor. Defendant admitted *that the disparities he claims did not rise from any purposeful or deliberate discrimination and that the grand jury selection system used in Alexandria was administered in good faith.* The evidence established that the citizens selected came proportionally from the eight wards of the city, thereby providing a broad geographical base. Members of both sexes were selected, as were black and white citizens and members of all religious faiths. There were representatives on the list from each classification to which the defendant took exception. In fact, the grand jury that indicted defendant may have included a member of each class which defendant claims is underrepresented.

The defendant neither claimed nor attempted to show intentional and purposeful exclusion of any class, and he has shown none that was prejudicial to him. Absent such a showing his challenge of the judgment of the court below must fail.[4]

The procedures prescribed by the statutes of Virginia, and those followed in the selection and in the composition of the grand jury list for Alexandria, fully protected the integrity of the judicial system and the trial process. There has been no violation here of any Fourteenth Amendment or other constitutional rights of the defendant. The judgment of the lower court is therefore

*Affirmed.*

---

[4] In *Quick* v. *Harris*, 214 Va. 632, 202 S. E. 2d 869 (1974), we held that a male defendant had no standing to attack the alleged systematic exclusion of women from jury service.