Cecil **WOOD**, Jr., Petitioner,

v.

Robert Frank **ZAHRADNICK**, Warden, **Virginia State Penitentiary,** Respondent.

Civ. A. No. 75–0444–R.

United States District Court, E. D. Virginia, Richmond Division.

March 29, 1977.

John D. Grad, Alexandria, Va., for petitioner.

Jim L. Chin, Asst. Atty. Gen. of Va., Richmond, Va., for respondent.

MEMORANDUM

MERHIGE, District Judge.

Petitioner, an inmate at the Virginia correction system, brings this action under 28 U.S.C. § 2254 in which he attacks several 1972 state court convictions. The respondent is the Warden of the Virginia State Penitentiary. Jurisdiction is attained pursuant to 28 U.S.C. §§ 2241(a) and 2254. The matter comes before the Court on cross-motions for summary judgment. The issues have been briefed and argued by counsel, and the matter is ripe for disposition.

The petitioner was convicted of seven offenses stemming from a brutal rape and beating of a 67-year old woman. The petitioner was sentenced to death in connection with the rape conviction. Life imprisonment was ordered on a burglary count, and the petitioner was sentenced to a total of 60 years confinement on the remaining charges. The death sentence was subsequently overturned. *Wood v. Commonwealth*, 213 Va. 346, 192 S.E.2d 808 (1973). Two issues are raised by the instant petition: (1) was the petitioner competent to stand trial?; and (2) was the petitioner afforded effective assistance of counsel? These issues were presented to and disposed of adversely to the petitioner by the Circuit Court of the City of Norfolk. A petition for a writ of error was denied by the Supreme Court of Virginia under date of May 1, 1975. In ruling on this petition, the Court has reviewed the transcript of the original trial, the transcript of the state habeas corpus proceedings, the file of the petitioner's attorney at his trial, and the *de bene esse* depositions of two expert witnesses.

The question of the petitioner's competency at the time of trial is interrelated with the effective assistance of counsel issue. The essence of the latter claim is the failure of counsel to investigate or pursue any defenses pertaining to the petitioner's competency to stand trial or his mental capacity at the time of the commission of the offenses. Conspicuously absent from petitioner's trial records is a request for a psychiatric evaluation under § 19.2–169 of the Code of Virginia, as amended. For the reasons that follow, the Court concludes that counsel's failure to investigate or raise these defenses constitutes a denial of effective assistance of counsel.

The offenses themselves were particularly bizarre. On October 31, 1971, the petitioner forcibly broke into the home of Mrs. Cherry Ann Duke. Mrs. Fannie Mae Chapman also resided at these premises. Both Mrs. Duke and Mrs. Chapman were in their late 60's at the time of the offenses. The petitioner was 27 years old. Mrs. Duke had known the petitioner his entire life as they were immediate neighbors. She had called the petitioner "Junie" since he was a child and he affectionately referred to her as "Miss Annie."

After breaking into the house, petitioner forced his way into the bedroom and a violent struggle ensued. Petitioner raped his 67-year old neighbor and beat her unmercifully. Mrs. Chapman was also struck several times. Petitioner then stole all the available cash from both of the victims as well as a portable television set and other assorted items. After forcing the women out of the house and beating Mrs. Duke again, the petitioner drove away in Mrs. Duke's automobile. Petitioner was arrested within hours of the incident when he was observed driving the stolen car by local police. At the time of his apprehension, the petitioner still had in his possession the items taken from the victims.

Counsel, now deceased, was appointed to represent petitioner shortly after his arrest. Counsel's notes and jail logs reflect that counsel visited his client no more than three or four times, including court appearances. The petitioner maintained throughout the criminal proceedings that he did not remember committing any of the offenses. The record reflects that he told his counsel, and later testified at his trial, that he was a heroin addict with a $25 a day habit. On the night pertinent to the case, the petitioner contended that he had been drinking bootleg whiskey and had taken five to seven bags of heroin. The last thing the peti-

tioner recalls about that night is being at the home of a lady friend, Princess Artis. He claims to have no recollection of leaving Ms. Artis' home, going to Mrs. Duke's residence, committing the offenses or being arrested.

Counsel's notes made on November 3, 1971 reflect that "[defendant's] mind does not seem to be completely clear even now—answers not always responsive to questions—have had to repeat myself several times on some points. Wants DARVON showing most all W/drawal symptoms." Despite this recorded observation and the bizarre nature of the crimes, counsel made no investigation as to whether the petitioner was competent to stand trial or whether any defenses based on the petitioner's state of mind at the time of the offenses were plausible. No pre-trial motions of any sort were filed. There is no evidence to indicate that counsel made any effort to locate or interview Princess Artis. There is no indication that Ms. Artis would have been difficult to locate. She was interviewed by the Probation Officer who prepared the presentence report in this case and stated that she and Mr. Wood engaged in sexual intercourse twice on the night of the offenses. This information, had counsel obtained it prior to trial, raises further questions concerning the already clouded issue of motivation. The record is devoid of evidence of any legal or factual investigation pertaining to the impact of drug addiction on the petitioner's competency or mental capacity at the time of the incidence at issue. Had counsel investigated this matter, he would have discovered that sexual activity is inconsistent with the use of heroin. There is no evidence that any attempt was made to secure existing institutional and psychological reports despite counsel's knowledge that the petitioner had been incarcerated previously. Had such an inquiry been made, it

would have been ascertained that the petitioner in 1964 scored a 55 on the Otis Quick Scoring Intelligence Test and a 67 on the revised Beta non-verbal I.Q. test. These scores indicate mild retardation. Counsel did not ask for a mental examination of the petitioner despite the availability of a specific procedure designed for this purpose. *See* Va.Code Ann. §§ 19.2–169–19.2–170 (1950 as amended).

The trial itself consisted largely of the police and victims' recounting the details of the crime and arrest. No factual contravention was offered on behalf of the petitioner. The defense, liberally construing that term, consisted merely of the petitioner's testimony concerning his heroin addiction and his inability to recall anything that may have happened on the night in question. At the conclusion of the trial, counsel for petitioner declined to move for the preparation of a pre-sentence report. The Court ordered an investigation and report on its own motion.

 It is fundamental "that the conviction of an accused person while he is legally incompetent violates due process." *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966); *Thomas v. Cunningham*, 313 F.2d 934 (4th Cir. 1963). It is equally unassailable that

> "[t]o be guilty of the crime a person must engage responsibility in the action. Thus, an insane person who does the act is not guilty of the crime."

*Easter v. District of Columbia*, 124 U.S.App. D.C. 33, 361 F.2d 50, 52 (1966). *Accord, United States v. Taylor*, 437 F.2d 371, 378 (4th Cir. 1971); *United States v. Chandler*, 393 F.2d 920 (4th Cir. 1968). The Court cannot conclude that the petitioner was unable at the time of his trial to consult with his attorney with a reasonable degree of understanding and assist in the preparation of his defense.[1] Nor can the Court conclude

---

1. In light of counsel's failure to develop this issue, the record is necessarily inadequate in this regard. There are several facts, however, which indicate that the petitioner was mentally competent at the time of trial. The arresting officers, the processing officer, and the local jailer all testified in the state habeas corpus proceedings to the effect that the petitioner evidenced no abnormal behavior. The trial judge also questioned the petitioner and satisfied himself that petitioner was competent to stand trial. While these factors are unquestionably relevant, no conclusion can be reached

that the petitioner was not responsible for his acts under Virginia law. *See Scales v. Commonwealth*, 214 Va. 728, 204 S.E.2d 273 (1974); *Thompson v. Commonwealth*, 193 Va. 704, 70 S.E.2d 284 (1952). The Court is satisfied, however, that these issues should have been explored and counsel's failure to do so deprived the petitioner of his right, secured by the Sixth Amendment, to effective assistance of counsel.

■ A number of courts have abandoned the "farce and mockery of justice" standard of gauging attorney effectiveness in favor of a more objective test. *See United States v. Easter*, 539 F.2d 663, 666 (8th Cir. 1976); *United States v. Edwards*, 488 F.2d 1154 (5th Cir. 1974); *United States v. DeCoster*, 159 U.S.App.D.C. 326, 487 F.2d 1197, 1202 (1973); *Moore v. United States*, 432 F.2d 730, 737 (3rd Cir. 1970). While the United States Court of Appeals for the Fourth Circuit has yet to explicitly reject the "farce and mockery" test, it has articulated guidelines to be followed in determining whether a particular person has been denied effective assistance of counsel. In *Coles v. Peyton*, 389 F.2d 224, 226 and n. 3 (4th Cir. 1968), the Court noted that

> "[C]ounsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself enough time for reflection and preparation for trial . . . As we stated in *Jones v. Cunningham*, 313 F.2d 347, 353 (4th Cir. 1963), '. . . it is not for the lawyer to fabricate defenses, but he does have *an affirmative obligation to make suitable inquiry to determine whether valid ones exist.*'" (Emphasis added)

Thus, an attorney's failure to investigate potential defenses, in *Coles v. Peyton, supra,* was held to constitute a denial of effective assistance of counsel. If reasona-

ble grounds exist for questioning the sanity or competency of a defendant and counsel fails to explore the matter, the defendant has been denied effective assistance of counsel. *Owsley v. Peyton*, 368 F.2d 1002, 1003 (4th Cir. 1966); *Kibert v. Peyton*, 383 F.2d 566, 569 (4th Cir. 1967); *McLaughlin v. Royster*, 346 F.Supp. 297 (E.D.Va.1972); *Cf. Caudill v. Peyton*, 368 F.2d 563 (4th Cir. 1966).

■ An attorney's duty, of course, does not mandate the exploration of the issues of sanity and/or competency in every instance. *Cf. Hawks v. Peyton*, 370 F.2d 123 (4th Cir. 1966); *Wieringo v. Riddle*, 418 F.Supp. 48 (W.D.Va.1976). Where, however, the facts known and available, or with minimal diligence accessible, to defense counsel raise a reasonable doubt as to a defendant's mental condition, counsel has an affirmative obligation to make further inquiry.

In the instant case, the crime itself was of such a bizarre nature as to call into question the petitioner's mental condition. A 27-year old man, for no apparent reason, raped, robbed and brutally beat a 67-year old woman who he had known his entire life. The trial transcript is devoid of any suggestion as to the petitioner's motive for these bizarre actions. The petitioner claimed to have no recollection of the crime, or even of his arrest. He did confess to drinking and taking heroin on the night in issue. As noted earlier, with reasonable effort, counsel could have discovered that his client had sexual intercourse on two occasions on the night in question and that heroin generally depresses rather than stimulates one's sexual appetite. Counsel himself observed the petitioner to be confused, unresponsive and suffering from withdrawal symptoms. With minimal effort, counsel could have learned of the petitioner's low I.Q. scores.[2] These facts, which were either

in the absence of the adversarial development of the issue.

2. The petitioner was later tested as having an intelligence quotient of 86 on the revised Beta non-verbal intelligence test and a 64 on the Otis Quick Scoring Intelligence Test. While the experts differed slightly on semantics the consensus was that these scores reflect a "borderline"

intelligence—between dull to normal and moderately retarded. The later test scores are probably more accurate. The only information available to counsel at the time of petitioner's arrest, however, was the lower I.Q. scores. Thus, it is the earlier test scores which are relevant to this proceeding.

known or ascertainable with reasonable diligence by counsel prior to trial, provided a reasonable basis for believing the defenses based upon the petitioner's mental capacity *might have been* plausible.

These defenses, moreover, appear to be the *only* defenses possible in the case where the life of the petitioner was at stake. The physical and testimonial evidence left no doubt that the petitioner committed acts, which if accompanied by the requisite mental state, constituted serious crimes. Thus, the only things standing between Cecil Wood and the electric chair, other than the mercy of the Court, were potential defenses pertaining to his mental condition. Yet, despite indications that such defenses might be developed, counsel failed to take even the first step of requesting that a preliminary mental examination, available under Virginia law, be conducted. An indigent facing capital charges is entitled to a more vigorous defense than exhibited by the court-appointed counsel in the instant case.

■ There are substantial indications, moreover, that defenses could have been advanced had counsel explored these matters. Dr. Brookhart, staff psychologist at the Virginia State Penitentiary, examined the petitioner shortly after his conviction. At that time, Dr. Brookhart found no evidence of mental illness. The purpose of that examination, however, was only to ascertain the petitioner's ability to adapt to the institutional environment. The doctor, moreover, was not aware of the facts surrounding the offenses at the time of this examination. Dr. Brookhart testified that had he been consulted for the purpose of determining competency and if he had been informed of the details of the crime he would have recommended a thorough examination prior to trial. Dr. Davies, a psychiatrist, was of the opinion that the facts surrounding the crime are consistent with the medical condition termed alcoholic pathological intoxication. A person acting under this condition would be unable to distinguish right from wrong. This, of course, is highly relevant to any defense of insanity. *See Scales v. Commonwealth,* 214 Va. 728, 204 S.E.2d 273 (1974); *Thompson v. Commonwealth,* 193 Va. 704, 70 S.E.2d 284 (1952). The facts surrounding the crime, moreover, raise questions in Dr. Davies' mind as to whether the petitioner was competent at the time of trial. The respondent's own expert, Dr. Mullaney, while discounting the probability that pathological intoxication was involved in the crimes, would not rule out its possibility. Dr. Mullaney would draw no conclusions as to whether the petitioner was sane at the time of the offenses or competent to stand trial. Dr. Mullaney agreed with Drs. Brookhart and Davies that several questions remain concerning the petitioner's mental condition at the time of trial and at the time of the offenses and that if he had been consulted prior to trial, he would have recommended further study.

■ The death of counsel precludes any conclusive determination as to why more effort was not exerted in the defense of the petitioner. Failure to make inquiry into the possibility of a defense based on sanity or competency does not appear to be based upon trial strategy. The Court can envision no tactical reason why these defenses were not explored. In a letter to petitioner's instant counsel, dated May 4, 1972, trial counsel stated "I made no motion to declare him [Mr. Wood] insane because he is not insane, nor do I think he was temporarily insane on the night of the crime." It was, however, counsel's duty to ascertain whether a sanity defense was valid. *Coles v. Peyton, supra; Jones v. Cunningham, supra.* While counsel's personal opinion may, of course, be relevant, its viability is greatly dissipated in light of the failure to seek an expert opinion.[3]

3. There is some indication that appointed counsel was less than enthusiastic about his assignment. When counsel associated with the American Civil Liberties Union expressed interest in assisting in the appeal of the convictions, trial counsel suggested that he become counsel of record. On March 24, 1972, trial counsel wrote to the attorney associated with the American Civil Liberties Union and stated "I . . . respectfully suggest that you petition

In summary, the Court does not conclude that Cecil Wood was incompetent to stand trial or that he was not responsible for his acts. This is, of course, not this Court's responsibility. The Court does conclude, however, that facts known or reasonably ascertainable by counsel prior to trial were sufficient to inject these issues in the case. Counsel, therefore, had "an affirmative obligation to make suitable inquiry to determine whether" these defenses could be advanced. *Jones v. Cunningham, supra*, 313 F.2d at 353. Counsel's failure to do so rendered his assistance ineffective within the meaning of the Sixth Amendment. The petitioner is therefore entitled to a writ of habeas corpus and release unless the Commonwealth of Virginia elects to retry him within a reasonable time.

An appropriate order will issue.

the Court of Appeals to be made counsel of record. If the Court is willing to grant your petition, *I shall be delighted to turn over my entire file to you and withdraw from this case with joyful hosannas.*" (Emphasis added). When counsel for the American Civil Liberties Union, in fact, became counsel of record, trial counsel informed the Clerk of the Supreme Court of Appeals, by letter dated June 5, 1972 that "[I]n light of . . . actions, I hereby *jubilantly withdraw.*" (Emphasis added).