Michael Randolph WALKER, Petitioner,

v.

J.P. MITCHELL, Warden, Virginia State Penitentiary, Respondent.

Civ. A. No. 83–0146–R.

United States District Court,
E.D. Virginia,
Richmond Division.

June 5, 1984.

Fred A. Talbot, Bremner, Baber & Janus, Richmond, Va., for petitioner.

Jerry P. Slonaker, Asst. Atty. Gen., Cr. Law Enforcement Div., Richmond, Va., for respondent.

## MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on the petition of Michael Randolph Walker for a

writ of habeas corpus. Walker was convicted for first-degree murder in a bench trial on April 19, 1974 in the Circuit Court of the City of Williamsburg. He was sentenced to a term of life imprisonment. Walker contends that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution because his court-appointed attorney failed adequately to investigate and raise defenses of insanity and/or voluntary intoxication.

The Attorney General of Virginia has filed a motion to dismiss or for summary judgment on behalf of the respondent. Walker has now exhausted his state remedies, and the Court has jurisdiction pursuant to 28 U.S.C. § 2254. A transcript of the testimony taken in petitioner's habeas corpus proceeding in the Circuit Court of the City of Williamsburg has been made available. Although the Court does not have the benefit of explicit factual findings from the state judge on most issues, the Court is of the opinion that the testimony is substantially non-conflicting on relevant matters. The Court therefore concludes that no further hearing is necessary and considers the petition ripe for disposition. *See* Rule 8(a), 28 U.S.C. *foll.* § 2254, *Rules Governing Section 2254 Cases In the United States District Courts.*

## Background

### The Crime

The criminal trial record reveals that on December 5, 1973, Walker shot and killed his girlfriend in front of several eyewitnesses. He and the victim, Lenis New,[1] shortly before had, together, entered a trailer-home. Five persons, acquaintances of Walker's, were sitting in the living room-kitchen area of the trailer. New sat down in a chair; Walker stood beside her. He then asked for a beer and insisted that New drink it. A short dialogue between Walker and New followed. Walker pulled out a pistol and fired a shot into the floor. He then shot New in the side of her head, walked over to her, and shot a second time down through her head. He then shot himself in the neck. Shortly afterward he walked to his brother's house about a block away, where he was arrested.

The evidence at trial showed that New and Walker apparently had severed their relationship shortly before the shooting. An acquaintance of theirs testified that about one week before the shooting Walker had stated that "he should shoot her [New] for what she has done to him."

### The Criminal Proceedings

Walker was charged, on December 6, 1973, with first-degree murder. Counsel who represented him throughout the trial and appeal proceedings was appointed sometime in December.

Walker and his court-appointed attorney both testified extensively in the habeas hearing in the Circuit Court of the City of Williamsburg as to the nature and content of their contact with each other during the criminal proceedings. Except for disagreements not significant herein as to the frequency and duration of their meetings, their testimony was substantially in harmony.

The attorney met with Walker at least several times before the trial. Their first meeting took place on or before January 10, 1974, the date of the preliminary hearing. At that meeting, Walker told the attorney that a military tribunal had convicted him of murdering his best friend while in the Army in Vietnam in 1968 but that the conviction had been overturned on insanity grounds.[2] Walker told him in addi-

---

1. The respondent's brief points out the respective races of Walker and the victim but fails to explain the relevance of this information. Unless the respondent is suggesting that racial prejudice affected the fairness of Walker's conviction, a suggestion incompatible with the respondent's opposition to the pending petition, the Court can imagine no possible relevance of this information and hence will omit it from the factual summary.

2. Actually, the Court of Military Appeals had reversed the conviction and returned the case to the Army Court of Military Review for further inquiry into Walker's sanity. *United States v. Walker,* 20 U.S.C.M.A. 241, 43 C.M.R. 81 (1971).

tion that he had thereafter been committed to the Veterans Administration ("VA") Hospital in Salem, Virginia for psychiatric treatment, where he remained until August, 1972. Walker also told his attorney that he had been represented in the appeal of the military case by Scott Jarvis of Topeka, Kansas. He further reported that he could not recall any of the events immediately surrounding the killing of New. Finally, he told the attorney that he had been drinking heavily on the night he killed New. Walker recollected that he had also given the attorney the names of two persons with whom he had been drinking on the day in question, David Wallace and Fred Johnson. The attorney did not recollect whether he had been given specific names.

These facts apparently caused Walker's attorney some concern over Walker's mental status, and he took steps to investigate it. At the preliminary hearing on January 10, 1974, he moved for a psychiatric examination of Walker. However, his request and the consequent examination were limited to whether Walker was mentally competent to stand trial and did not include any query as to his sanity at the time of the offense. The appointed psychiatrist, Doctor Hugh G. Stokes of Eastern State Hospital, found Walker competent to stand trial. Dr. Stokes based his opinion on his own examination of Walker; none of Walker's prior records, psychiatric or military, were made available to him at the time.

A month after the preliminary hearing, Walker's attorney, apparently still concerned about Walker's sanity, wrote the VA Hospital in Salem requesting information. The reply letter dated March 1, 1974 contained a two-page discharge summary of Walker's stay at the hospital. It disclosed in part that at the time of Walker's discharge to out-patient status in August of 1972, he was diagnosed as "schizophrenia paranoid type, in partial remission." The summary also confirmed that Walker had been released from a military sentence "after intensive investigation and determi-

nation that he was legally insane at the time of the offense."

On March 8, 1974, roughly two months after the preliminary hearing and just over a month before the scheduled trial date, Walker's court-appointed attorney wrote to Scott Jarvis of Topeka, Kansas, whom Walker had earlier identified as having represented him in the military case. The letter stated that, "I am attempting to prepare a similar [insanity] defense in the local proceedings" and requested that Jarvis send all relevant information from his file. The letter was returned as "moved, not forwardable." On March 21, 1974, the attorney wrote the American Bar Association to obtain Jarvis's current address, but he did not receive their reply, containing the requested address, until after the criminal trial.

On March 29, 1974, roughly three weeks before the scheduled trial date, Walker's attorney wrote the Department of the Army requesting information on Walker's military case. The requested material did not arrive, however, until late May, 1974, after Walker had been tried, convicted, and sentenced.

Finally, on April 11, 1974, a week before trial, Walker's attorney moved the Court to appoint a second psychiatrist, this time Dr. James R. Howerton, who was in private practice, to examine Walker. The motion was granted, and Dr. Howerton's report, filed with the Court on April 15, 1974, concluded that Walker was competent. Walker's attorney did not provide Dr. Howerton with a copy of the medical records he had obtained from the VA Hospital to aid his examination, but he did give the doctor an oral summary.

Dr. Howerton recollected that his appointment and his consequent examination and report were limited to the question of Walker's competence to stand trial. Walker's attorney recollected that he had also asked Dr. Howerton orally in a phone conversation for his opinion on Walker's sanity at the time of the offense, and that Dr.

The government then determined to dismiss the charge because of its inability to prove beyond a reasonable doubt that Walker was sane at the time of the offense, as applicable law required.

Howerton replied that he could not say whether Walker was sane or insane at that time. Mr. Howerton was not asked at the habeas hearing if he could confirm or deny the attorney's recollection.

Aside from these attempts at investigating an insanity defense, the defense attorney's trial preparation consisted basically of interviewing the prosecution's witnesses—the eyewitnesses to the crime and the investigating police officers. The testimony at the habeas hearing indicated that the attorney never contacted Walker's alleged drinking companions. The attorney testified that "the people [he] talked to [said that Walker] was not intoxicated," and the drinking companions testified that they had never been contacted. The testimony also indicated that the attorney did not contact Walker's brother's wife, who had seen Walker at her home shortly after the crime.

Walker's attorney recollected that he had had a discussion with the Commonwealth's Attorney before trial concerning a continuance to allow the various records that had been requested to arrive. However, he could not recall moving for such a continuance, nor does the criminal record indicate that he did so. In any event, no such continuance took place, and the matter proceeded to trial on April 19, 1974.

At trial, the jury was waived and the case was tried before the Honorable Robert T. Armistead. The Commonwealth produced testimony from the eyewitnesses, the investigating officers, and an acquaintance of Walker and New who stated that Walker had made a threatening statement about New a week before the shooting.

The defense attorney made almost no attempt to cross-examine the Commonwealth's witnesses, and a review of the transcript makes clear that he did not attempt a "reasonable doubt" defense. The defense put on no witnesses except Walker himself. Walker recollected that he had taken the stand against the advice of his attorney; the attorney could not recollect whether or not this was so.

Walker's testimony was rambling at best; he said that he could remember very few of the facts immediately surrounding the crime; that what recollection he had of the trailer scene was as if he were looking "in a slant"; that he had been drinking before the shooting; and that he would not have shot New if he had known what he was doing. Walker's attorney in his closing argument stated that, "I think there's some question as to his particular sanity at the time" but did not seriously argue an insanity defense, as evidenced by his remark that "I don't have any psychiatric evidence to offer, as the Court knows." Nor did he argue any other defense.

Judge Armistread convicted Walker of first-degree murder and sentenced him to a term of life imprisonment. Walker indicated his desire to appeal, and his trial attorney was appointed to represent him in that effort. The attorney noticed an appeal but failed to perfect it in a timely fashion; it was consequently dismissed on November 1, 1974. The attorney, recognizing that he had erred on the appeal, sent Walker a letter referring him to a Post-Conviction Remedies Organization for assistance on a "writ of habeas corpus in that regard."

*The State Habeas Corpus Proceeding*

Walker filed a habeas corpus petition in the Circuit Court of the City of Williamsburg on December 15, 1980, charging ineffective assistance of counsel as to both his trial and appeal representation. The Commonwealth answered with an admission that the appeal representation had been inadequate, and the Circuit Court ordered that a delayed direct appeal would be allowed simultaneously with the appeal of the Court's ruling on the remaining allegations in the habeas petition.

The Commonwealth denied that Walker had been ineffectively represented at trial. A plenary hearing was held on that issue on August 17, 1981.

Walker's habeas counsel called the allegedly ineffective trial attorney to testify at the habeas hearing. In addition to recounting the various trial preparation steps previously described, the attorney further testified that he was admitted to the bar in 1971 and that Walker's was probably his

first murder case. As to tactical choices he made in presenting Walker, he testified that, based on a review of his files and the transcript, he believed that he had decided that the only available defenses were insanity or voluntary intoxication. He also stated that he failed to raise a voluntary intoxication defense, which theoretically could have reduced the offense from first-degree to second-degree murder, because he was able to find no witnesses to substantiate such a defense; if he had had such witnesses, he said, he "would certainly have put them on the stand to testify." Finally, at numerous points in his testimony, the attorney stated that because of the lapse of time since Walker's trial he could not recall other tactical decisions he had made or investigative steps he had undertaken as Walker's defense counsel.

Walker testified at the habeas hearing on his own behalf. His relevant testimony had been summarized *supra.*

Walker produced in evidence the military records relating to his Vietnam offense and records from the files of Scott Jarvis. Those records contained references to numerous psychiatric opinions casting doubt on Walker's sanity at the time of the military offense, including a report by Dr. Deitrich W. Heyder of Norfolk, Virginia. The records revealed that Walker had originally been convicted of the Vietnam offense, but that after an appeals court reversed and remanded the conviction, the government dismissed the charges because of the doubts as to Walker's sanity at the time of the offense.

The aforementioned Dr. Heyder also testified at the habeas hearing on behalf of Walker. He said that had he been contacted in 1974 in connection with the shooting of New, he would have been available to testify at Walker's criminal trial. At the behest of Walker's habeas counsel, he had, before the habeas hearing, reviewed the various records on Walker and the testimony from other persons on the events surrounding the shooting of New. Based on that review, and his earlier familiarity with the Vietnam offense, it was his opinion that Walker was suffering from the same mental illness at the time he shot New as had

inflicted him at the time of the Vietnam offense. He noted numerous similarities between the two crimes that he deemed significant. He diagnosed Walker as suffering from a long-term non-acute mental disease that had erupted upon occasion into what he termed a "brief reactive psychosis"; the times of the two offenses were such occasions. He testified further as to the basis for his diagnoses. He concluded that, at the time of the offenses, Walker was able to distinguish right from wrong but was not capable of adhering to the right.

David Wallace also testified at the habeas hearing on behalf of Walker. He said that he had been drinking with Walker on the afternoon of the shooting. He had knowledge of how much liquor Walker had consumed at that time, and he would have been willing to testify at Walker's criminal trial if he had been contacted. He said he was never approached by Walker's attorney. The parties stipulated that Fred Johnson would have given similar testimony at the habeas hearing if called.

Finally, Virginia Walker, Walker's brother's wife, testified at the habeas hearing that she observed Walker immediately after the shooting. She testified that she continued to live in her home a block away from the shooting, where she observed Walker that night, but that Walker's attorney never contacted her. She further testified to several observations she made of Walker's statements and behavior on the evening in question that might have lent credence to an insanity defense.

The Commonwealth produced two witnesses at the habeas hearing: Dr. Stokes and Dr. Howerton, who were the two doctors who had found Walker competent to stand trial in 1974. Both testified that their conclusions as to Walker's competency would not have been substantially different had they been provided with Walker's past military and psychiatric records. They further testified that they had recently reviewed the military and psychiatric records and criminal proceeding transcripts, at the Commonwealth's behest. Based on that review, they both testified

that they would not have concluded that Walker was insane at the time of the offense had they examined him on that issue, with those records in hand, in 1974.

The Circuit Court of Williamsburg denied Walker's petition, except to allow a belated direct appeal as previously discussed. The judge did not make formal factual findings nor explain his reasoning in any detail.[3]

The Supreme Court of Virginia heard the belated direct appeal but found that there was no appealable error. *Walker v. Mitchell,* 224 Va. 568, 299 S.E.2d 698 (1983). It also heard but declined to reach the merits of the habeas claim because, in its opinion, Walker had delayed overlong in asserting his claim. In reaching this result the Court borrowed from the federal rule on delayed petitions, which states that a petition may be dismissed "if it appears that the state has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows [that the delay was justified]." Rule 9(a), 28 U.S.C. *fol.* § 2254, *Rules Governing Section 2254 Cases in the United States District Courts* (1983). The Court found that the Commonwealth had been prejudiced by the six and one-half year delay between the criminal trial and the filing of the instant petition. The ground for the prejudice finding was that "defense counsel's recollection was lost in many respects over the years as a result of the delay." *Walker v. Mitchell,* 299 S.E.2d at 703. The Court also found that the petitioner had not shown any justification for the delay. Consequently, the Court concluded that the petition was unduly delayed and should be denied on that ground. *Id.*

## DISCUSSION

### Delayed Petition

The Commonwealth urges this Court likewise to deny the petition because of the

six and one-half year delay and resultant prejudice. This Court is of the opinion that the facts as found by the Virginia Supreme Court do not amount to the kind of prejudice necessary to deny a petition solely on the ground of undue delay.

■ In cases where undue delay under Rule 9(a) has been found, the prejudice to the respondent was unquestionable and substantial: a key witness had died, or crucial records, such as the defense attorney's case file, had been lost or destroyed. *See, e.g., Johnson v. Riddle,* 562 F.2d 312 (4th Cir.1977) (seventeen year delay, defense counsel had died); *Arnold v. Marshall,* 657 F.2d 83 (6th Cir.1981) (27 year delay, defense counsel's file had been discarded); *Silva v. Zahradnick,* 445 F.Supp. 331 (E.D.Va.1978) (21-year delay, trial counsel had died, appellate counsel had lost or destroyed his notes). In those situations, evidence was no longer available at the time the petition was filed that clearly would have been available at an earlier time. In this case, the Commonwealth has not shown that Walker's defense attorney would have remembered more about the case four, or even five, years earlier. Walker's attorney, a busy defense lawyer with a substantial criminal practice, could as easily have forgotten specifics about the case, other than those recorded in his notes, in two years' time as in six and one-half years.

■ For the purposes of Rule 9(a), prejudice cannot be presumed solely from the passage of time. A 1976 Amendment struck from the rule a clause to the effect that prejudice could be rebuttably presumed after five years. *See Advisory Committee Note* on Rule 9(a), "1976 Amendment." The legislative history of the amendment reveals that the presumption was eliminated because, *inter alia,*

---

**3.** Apparently the judge determined that Walker's counsel was not ineffective, although he may also have been influenced by the delay in bringing the petition. The judge also appears to have applied an incorrect legal standard, as evidenced by the following quote from his remarks from the bench:

> ... the Court does not feel the evidence has been produced that convinces the Court, and I think that's the test, .... that Mr. Walker met the test of insanity at the time of the commission of the offense.

Exhibit A (Joint Appendix to Va. Supreme Court Appeal), p. 338. *See* text, *infra,* for this Court's view of the correct standard.

"Those facts which make it difficult for the state to respond to an old claim (such as the death of the prosecutor) can readily be discovered by the State." *1976 U.S.Code Cong. & Adm.News*, 94th Cong., 2nd Session, p. 2482 fn. 8. Defense counsel's lack of recall is not the kind of difficulty Congress had in mind.

The risk that an innocent person might remain incarcerated is too grievous to permit prejudice to be found on the minimal showing made here. The Court declines to deny the petition pursuant to Rule 9(a) and proceeds to the merits of petitioner's contention that he was inadequately represented at trial.[4]

*Ineffective Assistance*

The petitioner argues that Walker's attorney had a duty under the circumstances to investigate an insanity and/or a voluntary intoxication defense, and that his actions fell short of fulfilling that duty.

The respondent's position is that the attorney investigated the case adequately to satisfy the constitutional requirement of effective assistance of counsel.

The general standard to be applied in evaluating petitioner's claim is as follows: "was defense counsel's representation within the range of competence demanded of attorneys in criminal cases?" *Marzullo v. Maryland*, 561 F.2d 540, 543 (4th Cir.1977). The petitioner is not constitutionally entitled to errorless representation, and he must establish that any error he complains of was so flagrant that it must have "resulted from neglect or ignorance rather than from informed, professional deliberation." *Id.*, 561 F.2d at 544. The Federal Courts of Appeals have all adhered to the standard stated in *Marzullo v. Maryland* for some time, and the Supreme Court has quite recently affirmed it. *Strickland v. Washington*, —— U.S. ——,

——, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

Case law developed under *Marzullo v. Maryland* offers guidance in interpreting the standard.

The standard is an objective description of the competency normally demanded of attorneys. It is a flexible test, but counsel must perform at least certain specifics, *e.g.*, . . . he must conduct appropriate factual and legal investigations to determine if certain defenses can be used. *Marzullo, supra; Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir.), *cert. denied*, 393 U.S. 849, [89 S.Ct. 80, 21 L.Ed.2d 120] (1968).

*Loe v. United States*, 545 F.Supp. 662 (E.D. Va.1982), *aff'd without publ. opinion* 701 F.2d 169 (1983). With regard particularly to investigation of an insanity defense,

Counsel has an affirmative obligation to make further inquiry where the facts known and available, or within minimal diligence accessible to defense counsel raise a reasonable doubt as to the defendant's mental condition. "If reasonable grounds exist for questioning the sanity or competency of a defendant and counsel fails to explore the matter, the defendant has been denied effective assistance of counsel." *Wood v. Zahradnick*, 430 F.Supp. 107, 111 (E.D.Va.1977), *aff'd* 578 F.2d 980 (4th Cir.1978) [other citations omitted].

*Loe v. United States*, 545 F.Supp. at 666.

The *Wood v. Zahradnick* statement quoted in *Loe* should apply equally to investigation of a voluntary intoxication defense. If the law provides that the defendant cannot be convicted of the crime charged if he was too intoxicated to form the requisite intent, and preliminary indications create reasonable grounds for suspecting that the defendant may have been

---

**4.** As an alternative grounds for avoiding consideration of the merits, the Commonwealth urges that Walker should be bound by his representations at trial, in response to the judge's questions, that he had no complaint about his lawyer's trial preparation, that his lawyer had done anything he asked him to do, and that he had no

witnesses. In the Court's view, the defendant's representations were only as good as the advice on which they were based, and that advice was tainted by the attorney's inadequate investigation. *See O'Tuel v. Osborne*, 706 F.2d 498 (4th Cir.1983); *Strader v. Garrison*, 611 F.2d 61 (4th Cir.1979).

so intoxicated, then counsel has a duty to make further inquiry.

■ Once it is determined that an attorney had a duty to investigate a particular defense, the case law from the lower courts provides guidance only in general terms on how extensive the investigation must be. An attorney must make "appropriate investigations, both legal and factual ..." *Coles v. Peyton,* 389 F.2d at 224, 226 (4th Cir.1968). He must "undertake reasonable steps...." *Wood v. Zahradnick,* 578 F.2d 980, 982 (4th Cir.1978). It has been suggested that lack of an alternative defense heightens the attorney's investigative duties as to any avenue which offers hope, *id.,* and that the seriousness of the offense charged is a factor to be considered in testing the sufficiency of the steps taken. *Wood v. Zahradnick,* 430 F.Supp. 107, 112 (E.D.Va.1977), *aff'd, supra; Vela v. Estelle,* 708 F.2d 954, 964 (5th Cir.1983).

■ In *Strickland v. Washington,* the Supreme Court decries the setting of specific guidelines for attorney conduct, but the Court affirms that "[r]epresentation of a criminal defendant entails certain basic duties." *Supra,* —— U.S. at ——, 104 S.Ct. at 2064. Among these is the "duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.* As to the duty to investigate, the Court states as follows:

> "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgements."

—— U.S. at ——, 104 S.Ct. at 2066. This standard is compatible with the prior case law, but clarifies that a particular decision not to investigate may be reasonable in light of all the circumstances; if it is, the failure to investigate is not ineffective assistance of counsel.

■ Applying these standards to the facts at hand, the Court has little trouble in finding that defense counsel should have investigated an insanity defense in the instant case. Although Walker, unlike the defendant in *Wood v. Zahradnick,* had some apparent motivation for the crime, the circumstances in which the shooting took place—no immediate provocation, relatively calm preceding moments, no attempt at secrecy, the shot he fired at himself just after the fatal shot at the victim—strike the Court as bizarrely suspicious. These facts, in combination with the significant facts that Walker had previously avoided a murder conviction on insanity grounds and had been committed to a psychiatric hospital thereafter, clearly alerted the attorney that insanity was potentially an "open avenue of defense." Absent a reasonable decision in favor of an alternative defense, insanity should have been investigated.

Indeed, the respondent does not seriously contest that Walker's attorney had a duty to investigate an insanity defense. Its position is that the attorney recognized this duty and conducted an adequate investigation. The Court disagrees. The attorney's efforts in this regard fell short of satisfying the constitutional requirement in several significant respects.

■ First, the attorney never requested a psychiatric examination on whether Walker was insane at the time of the offense. The two competency examinations by Drs. Stokes and Howerton are no substitute. Sanity at the time of the offense and competence to stand trial are two entirely different questions. *United States v. Walker,* 537 F.2d 1192, 1195 (4th Cir.1976).

> Unlike a determination of competence to stand trial, which focuses on a limited aspect of the defendant's present mental condition, an inquiry into possible lack of criminal responsibility at the time of the offense involves a complex evaluation of his total personality at the previous point in time. It requires that the expert have a substantial opportunity to observe the defendant and his mental processes.

*Id.; see also Loe v. United States,* 545 F.Supp. at 667–668.

Accepting *arguendo* the attorney's testimony that he asked the second doctor, Dr.

Howerton, in a phone conversation for his opinion on Walker's sanity at the time of the offense, the Court is convinced that this after-the-fact inquiry on a different issue from that on which Dr. Howerton had examined Walker is insufficient. In any event, Dr. Howerton's answer was that he could not say whether or not Walker was sane at the time of the event. This opinion provided no justification for foregoing further exploration of the other available sources of information on Walker's sanity.

Moreover, an important source of information for the doctors on Walker's sanity at the time of the offense would have been the observations of those who observed him at the time, for instance Walker's sister-in-law. While the Court would not fault Walker's attorney for having failed to interview Walker's sister-in-law had that been his only omission, the Court is convinced that in light of this and other omissions, Drs. Howerton and Stokes were in no position in 1974 to assess properly Walker's sanity at the time of the offense.

A second major respect in which Walker's representation was deficient was his attorney's failure to contact Scott Jarvis, the attorney whom Walker had identified as having secured his release from the military conviction on insanity grounds. For over two months after Walker gave him the name, he made no effort to contact Jarvis. At that time, roughly a month before the scheduled trial date, he attempted to write Jarvis at an address he believes he found in *Martindale-Hubbell.* When the letter came back "moved, not forwardable," then just weeks before the scheduled trial, he sent off another letter, this time to the American Bar Association ("ABA"), seeking Jarvis's address. Not surprisingly, the response did not arrive in time. Walker's attorney never attempted to phone Jarvis or the ABA, nor did he seek a continuance so that he could pursue his requests by mail. The record reflects no reason that a continuance request would have been denied, and indeed under these circumstances it may have been reversible error to deny a continuance. *See U.S. v. Walker, supra.* In any event, if the attorney had not waited so long to begin pursuing Jarvis, postal communication might have sufficed.

Thirdly, the attorney did not make timely efforts to obtain the military records of Walker's prior insanity defense and psychiatric treatment. The military records would not have been so crucial had the attorney had the benefit of their content through Jarvis. Yet Walker's attorney waited eight days or more, even after his letter to Jarvis was returned, before he wrote for the military records. Again not surprisingly, they arrived after the trial. Walker's attorney made no attempt to phone for the records or to seek a continuance.

The potential significance, to an insanity defense, of psychiatric records that predate the offense has been recognized on numerous occasions. *E.g., U.S. v. Walker, supra; U.S. v. Fessel,* 531 F.2d 1275, 1279–1280 (5th Cir.1976). Such records could be significant in several regards. They might be directly admissible at trial to support an insanity defense, with or without live psychiatric testimony. They could serve as helpful background information for psychiatrists examining the defendant in connection with the offense. Finally, they might direct a defense attorney to particular experts familiar with the client's history who might be able to assist actively in the defense of the present charge. Walker's attorney's failure to obtain records of such potential importance, if not explained by some reasonable tactical decision, compels a conclusion that his performance was deficient.

Fourthly and finally, Walker's attorney made inadequate efforts to obtain information from the VA hospital where Walker had been treated until just over a year before the offense. Although he wrote the VA Hospital early enough to receive a timely reply, he failed to follow up on it. The reply letter consisted primarily of a two-page discharge summary. It noted Walker's diagnosis as, "Schizophrenia, paranoid type, in partial remission." This should have prompted the attorney to contact the hospital for further information, in

the form of more detailed records or perhaps a conversation with a treating physician. The Court cannot say that competent counsel necessarily would have taken this particular step, but in the absence of other favorable psychiatric testimony, this is a route counsel could and should have explored.

By the attorney's own assessment, an insanity defense was the only possible full defense Walker could have attempted. In all, the attorney's efforts to investigate this defense consisted of four letters of inquiry, three of which were belated, and two requests for inapposite psychiatric examinations. The attorney offered virtually no tactical justification of his omissions except to suggest that he knew the presiding judge would be unreceptive to insanity defenses and would be particularly skeptical of a military court's findings on insanity.

This explanation might be more persuasive if the attorney had opted for some other defense over insanity, but it cannot justify leaving the defendant totally defenseless. It also ignores the fact that Walker need not have waived his right to a jury trial. Indeed, the explanation raises questions as to whether the attorney properly advised his client in regard to the waiver.

Mindful of the attorney's testimony that, after so many years, he could not recall all the tactical decisions he may have made, the Court has tried to imagine other possible tactical decisions that might have justified the attorney's omissions. The effort was to no avail. The Court concludes that, as measured by the standard discussed *supra*, the attorney's investigative efforts fell far short. He neither conducted a reasonable investigation nor made a reasonable decision to forego investigation.

This conclusion finds support in a comparison with other cases in which petitioners have claimed ineffectiveness with respect to investigation of insanity defenses. The petitioner relies heavily on *Wood v. Zahradnick, supra.* The Court does not find that case directly on point because the defendant's counsel in that case took no steps whatsoever to investigate the insani-

ty defense, whereas Walker's counsel did in fact make some effort.

However, the simple fact that counsel made some effort does not defeat an ineffective assistance claim. In *Loe v. U.S.*, the Court's finding that Loe's trial counsel had "invested substantial effort in developing the issue" did not defeat petitioner's claim. 545 F.Supp. at 667. Counsel in that case had secured lay witnesses to testify as to Loe's abnormal behavior, discussed the case with other attorneys who had represented Loe in other matters, obtained records from social service and correctional institutions that had seen Loe in the past, secured the testimony of two doctors who had previously determined that Loe was incompetent to stand trial, and asked to have government doctors examine Loe for sanity at the time of the offense as well as competence to stand trial. *Id.* Yet he failed, for no valid reason, to take advantage of Loe's entitlement under federal law to have a private psychiatrist examine him as to his sanity at the time of the offense. That failure deprived Loe of the only potentially favorable expert testimony on the single issue disputed at trial. The Court found that counsel's omission deprived Loe of effective assistance of counsel. 545 F.Supp. at 670; *see also Loe v. U.S.* ("*Loe II*"), 545 F.Supp. 673 (E.D.Va.1982), *aff'd without publ. opinion* 701 F.2d 169 (1983).

In *Brennan v. Blankenship*, 472 F.Supp. 149 (W.D.Va.1979), *aff'd without publ. opinion* 624 F.2d 1093 (4th Cir.1980), the defendant was accused of maliciously wounding his neighbors with a shotgun. Much as in Walker's case, the facts of what happened were indisputable, and insanity was recognized as the only possible defense. The defendant's two retained attorneys were persistent in their search for supportive psychiatric testimony and, although the first two examining doctors opined that the defendant was sane at the time of the offense, a third doctor disagreed. 472 F.Supp. at 151. The attorneys also worked diligently on the case in other regards. 472 F.Supp. at 151–153. However, the defendant became fearful that the third doctor's testimony might lead to a

determination of "continuing insanity" that would result in long-term commitment to a psychiatric facility, a possibility the defendant wished to avoid at all costs. 472 F.Supp. at 151.

When Brennan expressed this concern to his lawyers, they abandoned the insanity defense without adequately investigating and discussing with him the ramifications of applicable Virginia law regarding commitment to a psychiatric following an insanity verdict. 472 F.Supp. at 157–158. The habeas court found that Brennan's expression of concern, based as it was on his misunderstanding of the consequences of an insanity acquittal, was not a reasonable ground for the attorneys' decision to abandon further exploration of the defense. The lawyers' overall diligence did not excuse their flagrant omissions in this area, and the habeas court concluded that Brennan's right to effective assistance of counsel had been violated. *Id.*

A final case illuminates previously discussed cases by way of contrast. In *Barfield v. Harris,* 540 F.Supp. 451 (E.D.N.C. 1982), *aff'd,* 719 F.2d 58 (1983), the defendant had confessed to the authorities that she had poisoned the victim for whose murder she was charged and that she had poisoned four other persons as well. The insanity defense "readily suggested itself," 540 F.Supp. at 457, and the defense attorney diligently sought psychiatric support for the defense. However, after the defendant's own treating psychiatrist and two others appointed to examine her concluded that she was legally sane at the time of the offense, the attorney decided to forego further investigation of the insanity defense. Instead, he attempted to use those and other physicians' testimony to try to negate the "malice" element required for first-degree murder and to establish mitigating circumstances that might save his client from the death penalty. 540 F.Supp. at 457. The effort failed. 540 F.Supp. at 454.

Barfield's new counsel then filed a habeas petition and produced a psychiatrist who testified, in support thereof, that the defendant's sanity at the time of the offense was at least questionable. 540 F.Supp. at 457–458. The habeas petition "[took] the position that it was the duty of [trial counsel] to keep on 'shopping' until he found a psychiatrist who would testify that his client was insane." 540 F.Supp. at 458. The court rejected the contention, 540 F.Supp. at 459, and the Court of Appeals affirmed without discussion. 719 F.2d at 63. The trial attorney had made a reasonable decision to forego further investigation of the insanity defense.

In the Court's view the instant case falls clearly in the class with *Loe* and *Brennan* rather than with *Barfield.* In the former cases, there was some exploration of the insanity defense, yet counsel failed to take one or more readily available investigatory steps that might have made it possible to present a viable insanity defense. Counsel's omissions were not explained by reasonable tactical decisions, and there was no plausible alternative defense.

The instant case shares these characteristics. Walker's counsel made some efforts, although his were more perfunctory than in the other cases discussed. Yet he failed to take the readily available steps of securing Walker's military records or Jarvis's account of those records, of obtaining an examination of Walker's sanity at the time of the offense, and of consulting with the doctors who had treated Walker at the VA Hospital. These omissions are not explained by reasonable decisions in favor of an alternative defense or otherwise. In light of all the circumstances, including the seriousness of the offense charged, the Court cannot escape the conclusion that counsel's performance was deficient.

█ In light of its resolution of the insanity issue, the Court will address only briefly the claim that the attorney inadequately investigated the voluntary intoxication defense. In Virginia, while voluntary intoxication does not excuse all degrees of murder, a defendant who was in such a degree of intoxication as to render him incapable of deliberating and premeditating cannot be convicted of murder in the first degree. *Hatcher v. Commonwealth,* 218 Va. 811, 814, 241 S.E.2d 756, 758 (1978); *Drinkard v. Commonwealth,* 165 Va. 799,

803, 183 S.E. 251, 253 (1936). Walker told his attorney he had been drinking heavily on the day of the offense, and the attorney acknowledged at the habeas hearing that voluntary intoxication was the only possible defense other than insanity.

■■■ The attorney made some effort to investigate this defense. He questioned two or more of the eyewitnesses to the crime, and although he could not remember exactly what they said, he testified that he was sure they had said Walker was not intoxicated, because otherwise he would have called them to testify for Walker. The petitioner did not put forth testimony from the eyewitnesses or otherwise to contradict the attorney's testimony on this point.

The attorney was not asked at the habeas hearing whether or not he interviewed the arresting officer on this subject. The criminal trial record, however, reveals that defense counsel elicited testimony on cross-examination of the arresting officer that, at the time of the arrest, Walker had a bullet wound but otherwise "looked okay," which suggests his observations would not have aided an intoxication defense.

Walker himself testified that his attorney pressed him on several occasions for details on how much he had drunk that day. Walker's lack of recall prevented him from obliging.

The eyewitnesses, by their own accounts, had only a few seconds in which to observe Walker at the time of the crime, and their testimony that he was not intoxicated might not have totally foreclosed this defense. On the other hand, the evidence indicates that Walker left his drinking companions perhaps several hours before the offense occurred. The only person with him during the intervening period was New, the victim. In the Court's view, the attorney could reasonably have determined on this basis that the drinking companions' testimony would have been too removed from the time of the offense to have had any serious chance of impeaching the eye-

witnesses' contrary observations.[5] Had the attorney been acting diligently in the circumstances, especially where no alternative defense had been uncovered, he probably would have attempted to interview the drinking companions whom Walker had named. The Court cannot say, however, that the omission was so flagrant an error as to constitute ineffective assistance of counsel in regard to the voluntary intoxication defense.

*Prejudice*

The conclusion that Walker's counsel performed below the requisite range of competence does not end the matter, for the Court must still consider the question of prejudice. The Supreme Court has recently clarified that the burden of proof at this second stage of the inquiry is on the defendant, who must "show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington, supra,* — U.S. at ——, 104 S.Ct. at 2064.

This principle is clarified by contrast to standards the Court rejects, as follows:

The defendant must show that [the attorney's errors] actually had an adverse effect on the defense. It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding .... On the other hand, ... a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case.

— U.S. at ——, 104 S.Ct. at 2067.

The standard that the Court finally adopts comes partly from the test for the materiality of exculpatory information not disclosed to the defense by the prosecution, *United States v. Agurs,* 427 U.S. 97, 104, 112–113, 96 S.Ct. 2392, 2397, 2401–402, 49 L.Ed.2d 342 (1976), and is summarized as follows:

The defendant must show that there is a reasonable probability that, but for

---

**5.** The Court notes that this conclusion is based on the record before it, which is somewhat limited on this issue. The conclusion should not be interpreted as foreclosing any otherwise available defense that Walker may choose to prove if he is retried on these charges.

counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome .... When a defendant challenges a conviction, the question is whether there is a reasonable probability that absent the errors, the factfinder would have had a reasonable doubt respect guilt.

—— U.S. at ——, 104 S.Ct. at 2069.

■ The Court is satisfied in the instant case that the defendant has met this burden. While competent counsel would not necessarily have thoroughly investigated each of the avenues that Walker's attorney ignored, in all likelihood competent counsel would have uncovered an insanity defense from investigation of one or more of the available avenues. One possibility is that an adequate investigation would have led the attorney to Dr. Heyder, available just an hour's drive away in Norfolk, VA; if he had been contacted, he would have been willing to testify on Walker's behalf that Walker was not sane at the time of the offense. His testimony is but one example of what an adequate investigation could have uncovered from the wealth of available sources. In light of the lack of an alternative defense, it is virtually certain that the insanity defense thus uncovered would have been presented to the factfinder.

Had an insanity defense been uncovered and presented, a reasonable factfinder may or may not have acquitted Walker. The Court cannot say, in light of all the evidence in the case, that an insanity defense more likely than not would have been successful. On the other hand, there is a reasonable probability that it would have been, in the sense that the possibility is sufficiently substantial that the failure to present the defense does undermine confidence in the outcome. This is all that *Strickland v. Washington* requires.

The respondent suggests that the testimony of Drs. Stokes and Howerton at the habeas hearing compels a contrary resolution of the prejudice issue. The Court's view is that the difference between their opinions and that of Dr. Heyder is a matter for a factfinder to resolve after observing their testimony and weighing it in light of all other credible, relevant testimony on Walker's guilt.[6] If the only omission in Walker's representation had been the attorney's failure to request that Drs. Stokes and Howerton examine Walker on his sanity at the time of the offense, the Court would be more swayed by their present recollections as to what they would have concluded had they been asked the right questions in 1974. As detailed *supra*, however, this omission was in fact one of several; the other deficiencies are independently significant and are not nullified by the doctors' present testimony. The Court concludes that there is a reasonable probability that but for the attorneys' omissions, a successful insanity defense would have been presented.[7]

The writ will issue.

6. The Commonwealth suggests that Dr. Heyder's testimony should be ignored as inherently incredible. Dr. Heyder is a well-qualified doctor who is familiar with Walker's history and the facts of the offense in question, and his conclusion finds support in the opinions of the eight or more psychiatrists who examined Walker in connection with the Vietnam offense. Assuming *arguendo* that it is necessary and appropriate to consider this contention, the Court rejects it.

7. The prior case law in this Circuit held generally that it was the respondent's burden to show that an attorney's deficient performance was harmless error. *Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir.1968). A more specific, and arguably more stringent, rule had developed for cases in which the deficiency related to investigation of the insanity defense. *Proffitt v. United States*, 582 F.2d 854, 859 (4th Cir.1978). In such cases, the writ would not issue unless the evidence before the Court, or a subsequent court-ordered psychiatric examination, indicated the "existence of a substantial question of criminal responsibility." *Id.* The *Proffitt* rule, although purportedly derived from *Coles v. Peyton*, does not appear to be incompatible with the standard set in *Strickland v. Washington.* If an attorney's deficient performance led to neglect of the insanity defense where a "substantial question" of sanity exists, then confidence in the outcome of the trial in most cases would be undermined. If the *Proffitt* rule had been the governing principle in this case, the Court would have found that Dr. Heyder's testimony and the military records

relating to the earlier offense created a "substantial question" of Walker's sanity and hence would been required to issue the writ solely on the basis of that rule.