**UNITED STATES of America Plaintiff,**

v.

**Richard HOYT, Defendant.**

**No. 1:01CR283.**

United States District Court,
N.D. Ohio.

April 8, 2002.

Gary D. Arbeznik, Sr., Office of U.S. Atty., Cleveland, OH, for plaintiff.

Dennis G. Terez, Office of Fed. Public Defender, Cleveland, OH, Richard W. Hoyt, Cameron Mills, NY, for defendant.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

On August 16, 2001, this Court held a competency hearing to determine whether Defendant is competent to stand trial under the standard set forth in 18 U.S.C. § 4241. After hearing expert testimony, the Court granted the parties leave to brief the issue of Defendant's competency. On September 28, 2001, Defendant submitted his brief (Dkt.# 10); the government filed a response on October 17, 2001 (Dkt.# 11); and on March 26, 2002, Defen-dant filed a Supplemental Brief (Dkt.# 12). For the reasons stated below, the Court finds Defendant competent to stand trial.

## BACKGROUND

On June 27, 2000, Defendant was charged in a criminal complaint with six counts of bank robbery in violation of 18 U.S.C. § 2113(a) in the North District of Ohio. On June 29, 2000, Magistrate Judge Nancy A. Vecchiarelli granted Defendant's oral motion for a competency exam and hearing pursuant to 18 U.S.C. § 4241. Defendant arrived at the Metropolitan Correctional Center ("MCC") in Chicago, Illinois, on August 9, 2000. Dr. Daniel S. Greenstein ("Dr.Greenstein"), a licensed clinical psychologist, examined and observed Defendant from that date until September 28, 2000. Dr. Greenstein filed his report on October 4, 2000. Dr. Greenstein diagnosed Defendant as suffering from major depressive disorder, dysthymic disorder, polysubstance abuse, borderline personality disorder, and antisocial personality disorder. Post–Hearing Brief of Richard Hoyt at Exhibit A, p. 5. In addition, Dr. Greenstein reported that it was his medical opinion that Defendant was "not competent to proceed to criminal adjudication" and that Defendant was "in need of mental health services without which the legal proceeding will lack the requisite fairness in terms of having the interests of both the government and the defendant represented." Post–Hearing Brief of Richard Hoyt at Exhibit A, p. 7.

On October 24, 2000, Magistrate Judge Vecchiarelli presided over Defendant's second competency hearing, and neither the government nor the Defendant objected to Dr. Greenstein's determination that Defendant was not competent to stand trial. Consequently, Magistrate Judge Vecchiarelli ordered Defendant committed to the custody of the Attorney General for hospi-

talization and treatment for restoration to competency at MCC.

On November 30, 2000, Defendant was transferred to the United States Medical Center for Federal Prisoners at Springfield, Missouri ("Springfield"), to undergo a comprehensive evaluation and treatment.[1] Dr. James K. Wolfson ("Dr.Wolfson"), a staff psychiatrist, first examined Defendant on December 1, 2000. Dr. Wolfson filed the first status report on February 28, 2001, a second status report on May 1, 2001, and a final report on May 25, 2001. Dr. Wolfson agreed with Dr. Greenstein's evaluation of Defendant as suffering from borderline personality disorder, antisocial personality disorder, and polysubstance abuse. Post–Hearing Brief of Richard Hoyt at Exhibit D, p. 19. Dr. Wolfson also reported that Defendant suffered from "[p]robable major depression, largely resolved." *Id.* Dr. Wolfson concluded that Defendant had been restored to competency, while expressing "some degree of uncertainty as to whether or not the defendant was ever truly incompetent." Post–Hearing Brief of Richard Hoyt at Exhibit D, p. 26.

On June 18, 2001, Bill Hedrick "Mr. Hedrick", Warden at Springfield, issued the requisite certificate of competency pursuant to 18 U.S.C. § 4241(e). Court Exhibit D. Mr. Hedrick informed the Court that it was the opinion of the clinical staff that Defendant had been restored to competency and that Defendant "possessed the mental capacity to understand the legal proceedings against him and to assist an attorney in preparing his defense." Id.

On August 16, 2001, this Court held a hearing pursuant to 18 U.S.C. § 4241(e), to determine whether Defendant was competent to stand trial. At the hearing, Lonnie Archuleta, the Defendant's mother, and Dr. Wolfson testified. The Court granted the parties leave to submit post-hearing briefs as defense counsel had not received the final report regarding Defendant's competence from Dr. Wolfson at the time of the hearing.

## LAW

Under 18 U.S.C. § 4241(e), after the director of the facility at which a defendant is hospitalized issues a certificate of competence, the court must hold a hearing, conducted pursuant to § 4241(d). If the court finds that a defendant "has recovered to such an extent that he is able to understand the nature of the proceedings against him and to assist properly in his defense, the court shall order his immediate discharge from the facility in which he is hospitalized and shall set the date for trial." 18 U.S.C. § 4241(e).

In *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), the Supreme Court stated that to be competent for trial, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and must have "a rational as well as factual understanding of the proceedings against him." *See United States v. Ford,* 184 F.3d 566, 580 (6th Cir.1999); *United States v. Murphy,* 107 F.3d 1199, 1203 (6th Cir.1997). The government bears the burden of demonstrating by a preponderance of the evidence that defendant is competent to stand trial. *United States v. Chapple,* 47 F.3d 1170, 1995 WL 6147, *2(6th Cir.(6th Cir. 1995)) (unpublished). "A preponderance of the evidence is such evidence that persuades the fact finder to conclude 'the existence of a fact is more probable than its nonexistence.'" *Id. quoting Disner v.*

---

1. The court received a letter from the Capt. Newton E. Kendig, the medical director at MCC, stating that the treatment ordered by the court could not be done at MCC. Therefore, Defendant was transferred to Springfield, where such treatment could be done.

*Westinghouse Elec. Corp.,* 726 F.2d 1106, 1109 (6th Cir.1984). Furthermore, "[i]n determining whether a defendant is competent, the court may consider a number of factors, 'including medical opinion and the court's observation of the defendant's comportment,' representations by defense counsel, and the defendant's psychiatric history." *United States v. Reinhold,* 1998 WL 88764, *2 (S.D.N.Y.)(*internal citations omitted*).

## DISCUSSION

Although Dr. Wolfson found Defendant competent to stand trial, Defendant maintains that he is not. Defendant's claim of incompetence relies for the most part on the diagnosis and evaluation performed by Dr. Greenstein at MCC. Defendant asserts four points in support of his contention that he is not competent to stand trial: (1) Dr. Wolfson has neither discredited Dr. Greenstein's conclusions, nor found fault with the manner in which Dr. Greenstein conducted his forensic evaluation of Defendant; (2) Defendant has a long history of troubled behavior, upon which Dr. Greenstein based his conclusion; (3) Dr. Wolfson failed to provide treatment or mental services consistent with Dr. Greenstein's recommendation in his written report; and (4) Defendant's cognitive awareness of court procedure is not definitive in determining Defendant's competence to stand trial.

Defendant's first point is based upon the fact that Dr. Wolfson and Dr. Greenstein—two qualified, court-appointed experts—reached opposite conclusions concerning Defendant's competence to stand trial. Defendant relies upon Dr. Greenstein's determination that Defendant is not competent to stand trial. In *United States v. Frank,* 956 F.2d 872, 875 (9th Cir.1991), the Court of Appeals for the Ninth Circuit found that the district court did not err in assigning greater weight to an expert's finding that the defendant was competent to stand trial despite another

expert's finding that the defendant suffered from major depression and was not competent. Dr. Wolfson, a board certified specialist in psychiatry and forensic psychiatry, was responsible for restoring Defendant to competence subsequent to Dr. Greenstein's diagnosis and evaluation of Defendant. Although Dr. Greenstein diagnosed Defendant as suffering from depression, it was Dr. Wolfson's professional assessment that over the course of the six months during which he subsequently treated and observed Defendant, that Defendant displayed the requisite competence to stand trial.

■ Defendant takes issue with the fact that although Dr. Wolfson disagreed with Dr. Greenstein, Dr. Wolfson did not discredit Dr. Greenstein's conclusions or find fault with his methodology. However, it was not necessary for Dr. Wolfson to do either in presenting to this Court his professional opinion that Defendant is competent to stand trial. Furthermore, rather than discredit the findings of Dr. Greenstein, Dr. Wolfson offered several reasonable explanations for their different conclusions.

First, Dr. Greenstein conducted his observations for less than two months, from August 9, 2000 to September 28, 2000, whereas Dr. Wolfson observed and examined Defendant for about six months, from December 1, 2000 until May 25, 2001. Second, Dr. Wolfson noted that he regards Dr. Greenstein "as a perfectly qualified colleague," but acknowledged that he disagreed with his reasoning. Def. Ex. D at 10. Dr. Wolfson explained that Dr. Greenstein interpreted Defendant's disinterest in his defense strategy and Defendant's seeming desire to remain incarcerated to Defendant's having a lack of capacity to have a rational understanding of the proceedings against him as a result of major depression. Tr. at 37.

However, Dr. Wolfson did not believe that Defendant's disinterest was the result of depression or that Defendant was incapacitated. Although he testified that Defendant displayed symptoms of dysphoria,[2] Dr. Wolfson's assessment was that it was not pervasive. Tr. at 38–39. Dr. Wolfson observed that Defendant did not display the symptoms frequently exhibited by those suffering from severe depression. Def.'s Br., Ex. D at 11. In fact, Dr. Wolfson was struck by the fact that Defendant was not displaying any impairment in functioning, such as neglect of hygiene and nutritional intake, or diminished interest in daily activities, which is generally observed in those who are severely depressed. Def.'s Br., Ex. D at 11.

Dr. Wolfson noted that he attached much more significance to the effect that Defendant's troubled family relationships and his failure to maintain respectable employment had on Defendant's depressed mental state than had Dr. Greenstein. Tr. at 37; Def. Ex. D at 10. Dr. Wolfson, therefore, attributed Defendant's lack of desire in defending himself to the fact that Defendant saw "no rational point in doing it" rather than as a result of being incapacitated. Tr. at 37. The fact that Dr. Wolfson did not discredit Dr. Greenstein's methodology or conclusions does not render Dr. Wolfson's conclusion flawed. Dr. Wolfson is a well-qualified professional and was able to observe and treat Defendant after he was evaluated by Dr. Greenstein, and, as noted above, for a significantly longer period of time than that which Dr. Greenstein treated Defendant.

■ Furthermore, even if Defendant is suffering from depression, the Sixth Circuit affirmed a district court's finding that the defendant was competent to stand trial despite the fact that he was suffering from major depression and borderline mental retardation. *United States v. Chapple*, 47 F.3d 1170, 1995 WL 6147, *2 (6th Cir.(6th Cir.)). Therefore, even if Defendant were suffering from depression it would not preclude this Court from finding Defendant competent to stand trial.

■■ Defendant also argues that Dr. Greenstein's observations are consistent with Defendant's long-standing and on-going behavioral problems. It is undisputed that Defendant endured a disadvantaged and abusive childhood and that his adulthood has been troubled thus far. However, the examination for competence to stand trial is a limited inquiry into a defendant's present mental condition. *United States v. Walker*, 537 F.2d 1192, 1195 (4th Cir.1976); *Loe v. United States*, 545 F.Supp. 662, 667–668 (E.D.Va.1982). As discussed above, Dr. Wolfson observed Defendant for close to six months, a substantially longer time period than Dr. Greenstein, and was able to supplement his own observations with those of other members of the nursing and correctional staff. In addition, Dr. Wolfson was able to obtain archived records of Defendant's past history that were not available to Dr. Greenstein. Tr. at 31. It is the opinion of the Court that based upon the substantial amount of time that Dr. Wolfson spent treating Defendant as well as the extensive medical history to which he had access, Dr. Wolfson's assessment of Defendant's competency to stand trial included much more than a limited inquiry into the Defendant's present mental condition. Despite Defendant's troubled past and his current mental health issues, Dr. Wolfson's conclusion that Defendant is presently competent to stand trial is well supported by his status reports and testimony at the hearing.

**2.** Dr. Wolfson described dysphoria as a state of sadness that results in a greater degree of interference with one's physical and mental functioning than is ordinary. Tr. at 38.

Defendant also argues that Dr. Wolfson failed to follow the recommendations of Dr. Greenstein and that Dr. Wolfson apparently believes that Defendant "effectively cured himself—if he ever was ill in the first place" and permitted Defendant to "determine when he would want medication." Post–Hearing Brief at 4. However, Dr. Wolfson's report and testimony do not indicate that he thought Defendant cured himself, but rather, that Dr. Wolfson questioned whether "the extent to which the course of action that Mr. Hoyt had expressed to Dr. Greenstein represents a true lack of capacity rather than simply not meeting others expectations of him in this situation." Tr. at 35. As discussed above, the fact that Dr. Wolfson disagreed with Dr. Greenstein's assessment of the Defendant does not preclude a finding of competency. Dr. Wolfson demonstrated that his conclusion that Defendant was not suffering from major depression and is competent to stand trial was well-supported and well-reasoned.

Last, Defendant points out that both Dr. Wolfson and Dr. Greenstein noted that competency to assist counsel involves more than the Defendant's cognitive awareness of court procedure. Defendant, however, has demonstrated that he is ca-pable of acting rationally and in his own best self-interest. For example, Defendant was accused of an attempted escape during his treatment at Springfield. Def. Ex. D at 14–15. At the time Defendant learned of the charge he understood that in the event of his conviction, the attempted escape charge might effect his prison facility designation. Id. Consequently, Defendant successfully defended himself against the attempted escape charge at the administrative hearing, thus demonstrating more than mere cognitive awareness of court procedure, as well as the ability to act rationally and in his own best self-interest.

In light of Dr. Wolfson's " 'medical opinion [3] and the court's observation of the defendant's comportment,' representations by defense counsel, and the defendant's psychiatric history" the Court finds that Defendant is competent to stand trial. *See Reinhold,* 1998 WL 88764, *2 (S.D.N.Y.)(*internal citations omitted*). Dr. Wolfson had the time and opportunity to fully assess Defendant's competency to stand trial. Dr. Wolfson's report and his testimony at the competency hearing demonstrate that his conclusion that Defendant is competent to stand trial is well-sup-

---

**3.** Dr. Wolfson offered the following reasons for his conclusion that Defendant is competent to stand trial:

> [The Defendant's] responses ... seem[ed] more reflective and rational than the description Dr. Greenstein made of the defendant at the time he was at the facility in Chicago. Assessment of a defendant's competence to assist counsel often is a more subtle and complex endeavor than simple [sic] tabulating that defendant's knowledge of court procedure. In this case, I could readily understand any attorney finding the defendant to be a challenging client with whom to work. However, the defendant's features that are most likely to make him difficult, his personality disorder and pattern of substance abuse, do not qualify as mental diseases, and typically they do not limit capacity but rather are associated with patterns of poor decision-making, selfishness, and a tendency to forgo exercising good judgement or foresight....[The] defendant has demonstrated the ability to express himself clearly and to communicate reliably. He has demonstrated an ability to comprehend and retain new information when it is presented to him. He has demonstrated an intact memory of events around the time of the instant offenses. He has also demonstrated the ability to make rational decisions, at least when he chooses to. These are all the same capacities he would need to assist his attorney.

Post–Hearing Brief of Richard Hoyt at Exhibit D, pp. 25–26.

ported by his observations and professional assessment of Defendant's behavior.

Based upon the hearing and post-hearing briefs, the Court finds the Defendant competent to stand trial under the standards set forth in 18 U.S.C. § 4241. Accordingly, the **TRIAL** in this matter is set for May 7, 2002, with a **Final Pre–Trial** set for April 22, 2002, at 10:30 a.m.

**IT IS SO ORDERED.**